**FOUNTAIN VALLEY CORPORATION, Plaintiff**

**v.**

**PATRICK J. WELLS, Defendant**

Civil No. 1981/310

District Court of the Virgin Islands

Div. of St. Croix

July 22, 1983

TODD H. NEWMAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

JONATHAN W. MILLER, ESQ., New York, N.Y., U.S.A., *for plaintiff*

ROBERT C. MEYERS, ESQ., New York, N.Y., U.S.A., *for plaintiff*

HERBERT MURIEL, ESQ., Charlotte Amalie, V.I., *for defendant*

GEORGE ETHRIDGE, ESQ., Charlotte Amalie, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This is the continuation of issues which were raised in the "companion" case of Wells v. Rockefeller, 19 V.I. 481 (D.V.I. 1983). The Court in Civ. No. 82-212 dismissed the claims of Patrick Wells on the ground that they were actually compulsory counterclaims which should have been asserted in the present case. Wells v. Rockefeller, 97 F.R.D. 42 (D.V.I. 1983). After that decision, Mr. Wells, through

counsel, has filed in the present matter a motion to set aside the entry of default judgment dated September 29, 1982, simultaneously requesting permission to file an answer and counterclaim.[1] Oral argument was held and counsel on both sides submitted a number of briefs on this matter. Because the Court finds that defendant Wells has not raised a meritorious defense and that his failure to respond herein was culpable, the motion to set aside is denied.

## I. FACTS

On April 1, 1968, the parties herein entered into a 12-year lease agreement where plaintiff Fountain Valley Corporation ("FVC") leased 64 acres of land to defendant Wells ("Wells") upon which he set up a tree and shrubbery nursery. The nursery was established primarily to furnish the landscaping for an anticipated development project which would expand the resort area of Fountain Valley Golf Course to include homes and a resort hotel. The facts are set out in more detail in Wells v. Rockefeller, 97 F.R.D. 42 (D.V.I. 1983). Apparently, in 1977 or sometime before, Wells had defaulted on the terms of the lease and the lease was terminated. On September 29, 1977, the parties entered into a Partial Surrender of Lease whereby the original lease was reinstated, payment of past and future rentals due was extinguished, and the Wells Landscape Corp., Inc., and Fountain Valley Nursery, Inc., corporations of which defendant was president, quitclaimed any right they may have had in the 64 acres "by reason of assignment, joint venture or otherwise."

After the expiration of the lease, FVC sought possession of the property and filed this action for forcible entry and detainer pursuant to 28 V.I.C. §§ 782 and 785. Because Wells could not be located in the Virgin Islands after a number of attempts, service by publication was permitted under 5 V.I.C. § 112.[2] The last date of publica-

---

[1] Defendant Wells has subsequently filed an amended answer and an amended counterclaim.

[2] Section 112, in pertinent part, provides:

(a) When service of the summons cannot be made as prescribed in Rule 4 [Fed. R. Civ. P. ], and the defendant after due diligence cannot be found within the Virgin Islands, and when that fact appears by affidavit to the satisfaction of the district court, . . . the court shall grant an order that the service be made by publication of the summons . . . .

(b) The summons published shall contain the name of the court and the title of the cause, a succinct statement of the relief demanded, the date of the order for service by publication, and the time within which the defendant is required to answer the complaint.

. . . .

(c) The order shall direct the publication to be made in a newspaper of general

611

tion was March 27, 1982, and Wells was served by certified mail on July 19, 1982.[3] FVC did not fully comply with § 112: the publication notice failed to show the date of the Court's order permitting publication and it incorrectly required an appearance by Wells within three days instead of 30 days.

On August 19, 1982, FVC filed a motion for entry of default and a motion for default judgment which Wells received by certified mail on August 24, 1982. He never responded. The Clerk of the Court entered a default for failure of the defendant to appear and this Court entered a default judgment on September 29, 1982. FVC was granted restitution of the premises.

Prior to the Court's entry of judgment, Wells filed a complaint against FVC and others, in Civ. No. 82-212, for, among other things, malicious interference with business relationships and fraud and deceit in the formation of the 1968 lease agreement. He sought rescission of the lease, an equitable lien in the 64 acres of land, and an accounting upon the dissolution of an alleged joint venture agreement which pre-dated the 1968 lease agreement. The Court granted the motion to dismiss filed by defendants Rockefeller and others on the ground that these were compulsory counterclaims as defined by Fed. R. Civ. P. 13(a) which should have been raised in the present action. Wells v. Rockefeller, supra. Wells now raises basically these same arguments as counterclaims and requests that the default judgment be vacated.

## II. DISCUSSION

■■ The law in this circuit does not favor default judgments and any doubt should be resolved in favor of setting them aside.

circulation in a jurisdiction designated by the court as the most likely to give notice to the person to be served for such length of time as may be deemed reasonable, not less than once a week for four weeks. In case of publication, the court shall also direct a copy of the summons and complaint to be forthwith deposited in the post office, directed to the defendant at his place of residence, unless it shall appear that such residence is neither known to the party making the application nor can with reasonable diligence be ascertained by him. Alternatively, the order shall direct a copy of the summons and complaint to be forthwith deposited in the post office, directed to the defendant, by any form of mail requiring a signed receipt therefor. The defendant shall appear and answer within 30 days after the completion of such period of publication, and in the case of any form of mailing requiring a signed receipt within 30 days from the date of receipt as indicated by the signed receipt.
5 V.I.C. § 112(a), (b), and (c) (1967 & Supp. 1982).

[3] Counsel for FVC, in his affidavit, stated that Wells was served by mail on an earlier date. Plaintiff's Memorandum in Opposition to the Motion to Set Aside the Judgment ("Plaintiff's Opposition"), Affidavit of Todd Newman, Esq. Proof of that service or the date mailed, however, is not in the file.

Gross v. Stereo Component System, Inc., 700 F.2d 120 (3d Cir. 1983), Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir. 1951). The Third Circuit has set out three factors to determine whether a default judgment should be set aside pursuant to Fed. R. Civ. P. 60(b): 1) will the plaintiff be prejudiced by the set aside; 2) does the defendant have a meritorious defense; and 3) did culpable conduct on the part of the defendant lead to the default. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982).

A. *Prejudice to the Plaintiff*

FVC argues that it will be prejudiced by the set aside in that it has procured an interested buyer of the Fountain Valley property which includes the 64 acres in dispute. FVC states that the sale negotiations were carried out in reliance upon the default judgment entered in September 1982. Wells argues that FVC cannot be prejudiced because all persons interested in buying the property were put on notice that there was a question as to title of the property. A notice of lis pendens in Civ. No. 82-212 was filed by Wells before the default judgment was entered in this case. When Civ. No. 82-212 was dismissed on March 2, 1983, Wells, in this action, filed another notice of lis pendens on March 14, 1983. Further, FVC indicates in its Memorandum in Opposition to the Motion to Set Aside the Judgment ("Plaintiff's Opposition") at 24, that if the judgment is reopened, the sale could probably be renegotiated, although the new agreement may be less desirable. While the Court finds that the plaintiff would be somewhat prejudiced, this factor standing alone would not tip the scales in favor of maintaining the default judgment.

B. *Meritorious Defense*

■ The second factor that the Court must consider is whether the defendant has a meritorious defense. A meritorious defense is one which, from the study of the complaint and the proposed answer, if the allegations of the defendant's answer are established, the allegations would constitute a complete defense. Tozer, supra, 189 F.2d at 244. Wells in his proposed answer argues as a defense that the lease was procured through fraud and misrepresentation. In his proposed counterclaim, he argues that there was a continuing conspiracy from 1971 through 1982 to divest him of his interest in an alleged joint venture agreement which pre-dated the lease agreement.

■ Wells also filed an amended answer where he added the following defenses: 1) no subject matter and personal jurisdiction because of the failure of service of process; 2) fraudulent convey-

613

ance;[4] 3) interference with the joint venture assets which entitles him to an accounting;[5] and 4) entitlement to gather his harvest that he planted prior to the service of notice to quit.[6] FVC responds that all of these defenses and/or claims are barred because of either the statute of frauds or the statute of limitations. Because the Court agrees, these defenses are, in effect, nonmeritorious.

### 1. Joint Venture Agreement

Prior to the lease agreement, Wells alleges that he and David and Laurance Rockefeller, through the latters' agents, entered into a joint venture agreement where a plot of land consisting of 64 acres was the asset of the joint venture of which he obtained an interest. He further alleges that he was coerced in 1968 into signing the lease because of misrepresentations that were made to him for the purpose of depriving him of the joint venture asset: "That misrepresentation consisted of stating to the defendant that his delay in signing the lease was preventing the consummation of a transfer of the land to the developer who would provide defendant with a ready market for the sale of trees, shrubbery and plants." Defendant's (Proposed) Counterclaim, para. 37.

### a. Statute of Frauds

FVC argues that Wells may not allege any defense based on the alleged joint venture agreement because the statute of frauds bars the enforcement of an oral agreement. Wells argues that the two letters from a Mr. John McGrath, a representative of the Estate Fountain River Company ("EFRC"),[7] dated in 1967 and 1968, evidence the existence of the joint venture agreement and his interest in the land. They do nothing of the kind.

The 1967 letter only indicates that negotiations were going on regarding the establishment of a nursery. The substance of McGrath's 1968 letter, which is not signed by either party, also involves the establishment of a nursery business between Wells and EFRC. The structure of this business was to be a corporation jointly owned by EFRC and Wells.[8] There is no evidence that this corpora-

---

[4] 28 V.I.C. §§ 206–208, 210 (1976).

[5] 26 V.I.C. §§ 75 and 132 (1970).

[6] 28 V.I.C. § 792 (1976).

[7] This company is the parent company of FVC. Plaintiff's Opposition Memorandum, Exhibit K, Affidavit of Clayton W. Frye, Jr.

[8] Wells himself acknowledges that the joint venture was to be incorporated. Defend-

tion was ever formed. McGrath's letter, therefore, merely represents further negotiations to establish a nursery. At best, this letter indicates a proposed joint venture in the form of a jointly-owned corporation that never came into being.[9] Any joint venture agreement or interest in the land as described by Wells had to be by oral agreement, if it existed. This agreement undoubtedly was to exist for more than one year.

■ Under Virgin Islands law, any interest in property orally created, transferred, or assigned for a period greater than one year is void and unenforceable. 28 V.I.C. §§ 241, 242 and 244. The statute of frauds, therefore, would bar this Court from enforcing any alleged joint venture agreement. Wells responds, however, that a writing is not necessary because of the doctrine of part performance.

■ The doctrine of part performance is applicable as a defense to the statute of frauds in this jurisdiction. Virgin Islands Distributor, Inc. v. Durkee Foods, 19 V.I. 85 (1982), aff'd, No. 82-3251, slip op. (3d Cir. Feb. 14, 1983), Henderson v. Resevic, 262 F.Supp. 36 (D.V.I. 1966). In order to succeed in asserting part performance, Wells would have to show that his reliance on the oral agreement and subsequent actions were induced or acquiesced to by FVC to FVC's benefit and to Wells' detriment.

Wells, however, has not indicated that his actions were any different from what was required under the 1968 lease agreement. He argues that he wanted to protect his investment in the alleged joint venture agreement. He infers that he forfeited his alleged joint venture agreement interest for a 12-year lease which seemed to guarantee the same business objective of the alleged joint venture agreement: a developer who would purchase all or most of his landscaping needs from Wells. This leads the Court to the conclusion that any performance on the part of Wells was motivated by purely business reasons and was pursuant to the lease agreement and not the alleged joint venture agreement. In effect, the alleged joint ven-

---

ant's Memorandum to the Motion to Set Aside Default Judgment, Affidavit of Patrick Wells.

[9] FVC also submitted an opposing affidavit by McGrath stating that no joint venture agreement was formed. McGrath acknowledges, however, that he had negotiations with Mr. Wells in the 1960's regarding a "joint operation of a tree and plant nursery." Plaintiff's Supplemental Memorandum In Opposition to the Motion to Set Aside the Judgment, Affidavit of John W. McGrath.

ture agreement, if it existed, was either substituted or terminated by the 1968 lease.[10]

■ The statute of frauds, therefore, forecloses any defense which arises out of claims or defenses pursuant to the alleged joint venture agreement, which includes: 1) the claim for an accounting of the alleged joint venture; 2) conspiracy to divest Wells of his interest in the joint venture assets and/or agreement, and 3) interference with the joint venture assets.[11]

b. Statute of Limitations

■■ The claims and defenses raised by Wells all sound in tort, and, therefore, the two-year statute of limitations is applicable. 5 V.I.C. § 31(5)(A) (1967). The statute begins to run from the time a person knows of the fraud. 5 V.I.C. § 32(c).[12] The fraudulent misrepresentation and inducement to enter the 1968 lease agreement is a claim for fraud and under Virgin Islands law is an action in tort. Ingvoldstad v. Estate of Young, 19 V.I. 115 (1982). This claim brought approximately 15 years later is clearly barred.[13] As to the claim of fraudulent conveyance of the 64 acres from EFRC to FVC in 1967, Wells in his affidavit states that he knew of this transaction by March 1968. Wells argues further that he did not know until shortly after this motion was filed that the unrecorded deed was dated after the alleged joint venture agreement was entered into. This is irrelevant since Wells has argued that he originally dealt with EFRC and it was his initial understanding that EFRC was providing the 64 acres as the joint venture asset. This claim as well is barred by the statute of limitations. Lastly, as to Wells' entitlement to harvest the trees and shrubbery he planted prior to the notice to quit the premises, this right was foreclosed by the 1968 lease, which was reinstated and reaffirmed by Wells in 1977, and which gave the trees and shrubbery to FVC.

---

[10] See Restatement (Second) of Contracts § 279 and comments following. Cf. id. at §§ 280 and 281 (novation and accord).

[11] All of these actions are barred by the statute of limitations as well. See, infra.

[12] This Court has recognized the commencement of an action for fraud to include when a person should have known of the fraud as well. Ingvoldstad v. Estate of Young, 19 V.I. 115 (1982).

[13] The Court notes that Wells has also lost his right to void the lease agreement on this basis. By complying with the lease agreement and then reinstating it after its apparent premature termination (the 1977 Partial Surrender Lease), he has in effect ratified the lease. See Restatement (Second) of Contracts § 380(2) (1981).

■ Wells' rights to an accounting, an equitable lien, and the winding up of the alleged joint venture stem from his claim for fraud perpetrated by a breach of fiduciary duty. As previously noted, because the claim is based in fraud, the two-year statute of limitations is applicable. The relationship between co-adventurers is a fiduciary one where one co-adventurer has the obligation of fairness, good faith, and full disclosure to his fellow co-adventurer. McRoberts v. Phelps, 138 A.2d 439, 445 (Pa. 1958). Wells, in essence, argues that failure of EFRC to disclose the transfer of the 64 acres to FVC and the conspiracy to divest him of his joint venture interest were breaches of that fiduciary duty.

While a joint venture is technically not a partnership, this circuit has indicated that it is something of subspecies of partnership. See First Mechanics Bank of Trenton, N.J. v. Commissioner of Internal Revenue, 91 F.2d 275, 278 (3d Cir. 1937). See also 46 Am.Jur.2d Joint Ventures § 4 (1969) (a joint venture is a partnership for a single transaction). See generally Richardson v. Walsh Construction Co., 334 F.2d 334, 336 (3d Cir. 1964) (general definition of a joint venture). Further, there is evidence in this jurisdiction that the Virgin Islands Uniform Partnership Act ("U.P.A."), 26 V.I.C. § 1 et seq., has been applied to joint ventures. Wise v. DeWerd, 358 F.2d 389 (3d Cir. 1966). By analogy, the Court will apply the U.P.A. in this matter.

■ Under the U.P.A., the accrual of the right to an accounting starts at the date of dissolution. 26 V.I.C. § 135. Dissolution occurs whenever one of the partners ceases to be associated with the carrying on of the partnership business. 26 V.I.C. § 121. In this case, the change in relationship occurred with the 1967 transfer of property. Clearly, this action is beyond the two-year statute.

■ ■ As to the conspiracy count, without deciding whether a party can be liable for conspiring to breach his own contract, the 1968 lease agreement divested any interest Wells may have had in the alleged joint venture agreement. Once the alleged joint venture agreement terminated, the conspiracy ceased since the alleged conspired action had occurred. However unlikely, it is arguable that his interest survived the agreement, but it was plainly and explicitly terminated by the 1977 Partial Surrender lease. The statute of limitations commences on the date of the last overt act. See Grunewald v. United States, 353 U.S. 391 (1957) (criminal conspiracy). The last date, at best, would be in 1977. This, too, is time barred.

617

Because Wells' defenses are either barred by the statute of frauds or the statute of limitations they are, in effect, nonmeritorious.

## 2. Validity of Service of Process

■ Wells argues that this Court does not have personal or subject matter jurisdiction because the summons specified the incorrect time with which Wells was to respond, as well as it failed to indicate the date of the Court's order for service pursuant to the requirements of 5 V.I.C. § 112(b) and (c).[14] The Court finds that the failure to include the court order date is a minor infraction and was not in any manner prejudicial to Wells. The failure to specify the correct time returnable, however, requires discussion.

FVC incorrectly provided in its summons that Wells had three days, instead of 30 days as required by § 112(c), to respond to the complaint. The Court has found no Virgin Islands case law regarding the failure to strictly comply with § 112. The Court finds, however, that it is guided by case law pursuant to Fed. R. Civ. P. 4 since service in this Court is governed by Rule 4 and, analogously, both § 112 and Rule 4 require that the time to respond to a summons be included in the summons.

■ Case law indicates that a litigant should not be denied his day in court because he complied in good faith with an incorrect date to respond to a pleading. See Security Trust and Savings Bank of San Diego v. Walsh, 91 F.2d 481 (9th Cir. 1937). In A. C. Samford, Inc. v. United States, 226 F.Supp. 72 (M.D. Ga. 1963), the defendants filed an answer within 60 days as incorrectly noticed in the summons instead of 20 days as required under the federal rules. In discussing whether service was void, the court noted that there were cases which held that there was no jurisdiction when this returnable summons was noticed to a time greater than that legally required. Other cases held that such defect was a mere irregularity subject to amendment. It further noted that case law existed which held that where a writ was returnable at a time not authorized by law it was void and therefore not amendable. None of these cases were specifically cited, however. The court found that any defect in that case was cured because the defendants had filed an answer.

The Samford court, although it was not cited, appears to have followed the position adopted by Wright and Miller. They note that:

> . . . a summons specifying an incorrect time for the submission of an answer normally should be deemed cured by the defend-

---

[14] See n.2, supra.

ants' responding to it and filing an answer. Only when the error actually results in defendants' prejudice or demonstrates a flagrant disregard of the requirements of Rule 4(b), as when plaintiff or his attorney purports to issue and sign a federal summons, is the court likely to rule that a failure to comply precisely with Rule 4(b) cannot be cured by amendment.

4 C. Wright & A. Miller, Federal Practice and Procedure § 1088 (1969). See also United Food and Commercial Workers Union v. Alpha Beta Co., 550 F.Supp. 1251, 1255 (N.D. Calif. 1982) (where summons required 10 days to respond when federal rules provided for 20 days, service of process was considered adequate).

The present case, however, is different in a number of respects. In all the cases above, the defendant filed an answer within the designated period of the summons,[15] although the time was incorrect. Further, there is an underlying assumption by Wright and Miller that at least one party recognize the defect in the summons to permit a party to amend the service of process or to prevent such amendment. In the present case, no answer was filed until the Court dismissed Wells' action in Civ. No. 82-212, and the parties were informed by the Court of the defect, almost eight months after Wells' receipt of the summons.

The error on the part of FVC does not appear to be a flagrant disregard of the requirements of § 112, or Rule 4(b) for that matter. Section 785 of Title 28, the statute upon which this action was brought, provides that a summons be served and returned within three days. FVC is not without fault, however, since § 112(c) requires that when service of process is made by publication, the summons is returnable within 30 days.

The element of prejudice is not present after taking into consideration all of the circumstances. While the Court notes that the summons may have been somewhat misleading, there was no attempt on the part of Wells or his attorney to file a responsive pleading. This issue was raised only after it was brought to their attention by the Court. Wells was also served the complaint in July 1982 as well as served with the motion for default judgment. Default judgment was entered over a month after receipt of the latter motion.[16]

■ In weighing these factors, Wells would not be successful in

---

[15] In United Food, the respondent had not filed a formal answer but it had responded to two motions filed by the petitioner.

[16] See also Section C., infra.

arguing lack of personal jurisdiction because of an incorrect time stated for the summons returnable.[17] The errors would be considered minor and the prejudice suffered by the defendant inconsequential under these circumstances.[18]

In sum, all the defenses and claims raised by Wells would not be successful in establishing a complete defense to FVC's action for forcible entry and detainer.

### C. Defendant's Culpability

The third factor is whether Wells himself, directly or through his retained counsel, was culpable; that is, whether he acted willfully or in bad faith which led to the entry of the default judgment. Feliciano, supra, 691 F.2d at 657. Wells concedes that, in all instances from early 1982 until the present, he was represented by the same Virgin Islands counsel. His counsel filed a revealing affidavit as part of the motion to set aside the default judgment herein.

He states that when Wells was served the summons and complaint in this matter in Florida, Wells, "[o]n or about the same date," called his attorney and informed him of the summons and complaint, and the three-day notice provided in the summons. The attorney promised to investigate the matter. The attorney then concluded that because of the geographical difficulties involved (Wells in Florida, the attorney in St. Thomas, and the action filed in St. Croix)," it would be virtually impossible to attempt to do anything in the case." The attorney then concluded that he was prevented by local statute from filing a counterclaim in the action, that it would be difficult to join three other foreign parties, and that therefore he and Wells "prepared to file a separate action in which we felt we could assert our case *in toto*." (Emphasis in the affidavit.) Thus, it is clear that a determination was made by counsel and his client to ignore the action herein and proceed to assert Wells' claims by a separate action.

The attorney now assets that he mistakenly believed that he had only three days to respond to the FVC law suit herein, having been

---

[17] He would be unsuccessful in arguing no subject matter jurisdiction as well. The subject matter of this dispute, the interest in the 64 acres of land, is located in the Virgin Islands. Subject matter jurisdiction is conferred on this Court by 48 U.S.C. § 1612. See also Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1058 (3d Cir. 1982) (no limitation on district court jurisdiction except where Territorial Court has exclusive jurisdiction).

[18] The Court notes that a judgment would not be considered void but voidable if a party successfully challenged personal jurisdiction on this ground.

misled by the information in the served summons limiting him to three days to file a responsive pleading. It was this erroneous belief, he now claims, which caused him to proceed by way of a separate action. To accept that premise, this Court would also have to accept that an attorney licensed in the Virgin Islands, and no neophyte to the law, was not aware of the following:

1) That the Federal Rules of Civil Procedure are applicable to the District Court of the Virgin Islands by reason of Section 25 of the Revised Organic Act of 1954, 48 U.S.C. § 1615.

2) That Fed. R. Civ. P. 4(e) looks to state statutes for the response time when service is made outside the jurisdiction.

3) That 5 V.I.C. § 112(c) provides for a party to appear and answer within thirty days of service by certified mail, return receipt requested.

4) That 5 V.I.C. § 4903 permits the District Court of the Virgin Islands to acquire jurisdiction over persons in matters involving claims for relief such as those asserted against the persons not named in the action herein. Thus, it would not be "difficult" to join these foreign parties.

Because the Virgin Islands is removed from the mainland by thousands of miles of ocean, the use of service by mail is common among attorneys in the territory. The Court cannot conceive of an attorney admitted here who is not aware that a person served by certified mail has thirty days, and not three days, to answer to a summons and complaint. Thus, no attorney would be misled by a mailed summons which requires a response in "3" days instead of "30" days, especially as, in this case, the order for substituted service was attached to the summons and complaint received by Wells. The order cited to 5 V.I.C. § 112 as the basis for service outside the jurisdiction, and a mere reading of the statute would tell counsel that he had 30 days to respond. This notice, arguably, may have cured the defect.

 Likewise, all local counsel know or are held to know that the same Federal Rules of Civil Procedure applicable to this Court provide for five days' notice on motions. An additional three days are added when service of a motion is made by mail. Fed. R. Civ. P. 6(e). FVC moved on August 19, 1982, for entry of judgment, and this motion, together with a supporting affidavit, was also mailed to Wells by certified mail, and received by him on August 24, 1982. There was still time to make an attempt to defend the action and assert all defenses and counterclaims. Again, there was no response.

There was no mistake by Wells' attorney. Rather, the failure to respond was voluntary and intentional. Wells and his attorneys made the strategic decision to go forward with a separate action, and this they did *even before* the default judgment was entered herein. That separate action, Civ. No. 82-212, was filed on September 15, 1982, and the default judgment herein was not entered until September 29, 1982.

■■ Wells was culpable in that he willfully did not respond to this law suit. It was an essential part of his strategy to permit a default judgment. Whether he was advised to follow this strategy by his attorneys, or whether he stage-managed the matter himself, is of no consequence. The litigation strategy of counsel is imputed to the client. Link v. Wabash Railroad Co., 370 U.S. 626, 633–634 (1962).

In Link, the Supreme Court said:

> Petitioner voluntarily chose his attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

370 U.S. at 633.

As one looks at this case, one is left with the inescapable notion that Wells waited far too long to assert whatever rights he possessed, and then retained an ingenious and innovative attorney who made a valiant attempt to resuscitate the Wells claim, to no avail.

### III. CONCLUSION

Stripped to its essential elements, the Wells affirmative defenses and counterclaim can be viewed in the following factual setting:

Wells discussed with others, in the late 1960's, a joint venture relating to the development of the Rockefeller-owned Fountain Valley property. He says the joint venture came into being, his adversaries say it did not. There is no proof of its existence other than Wells' own sworn affidavit.

Whether it existed or not in the late 1960s, certainly it was not in existence after the lease was signed. Wells enjoyed each and every advantage of that lease, but he did not pay the rent on time. After years of nonpayment, he successfully negotiated a favorable modification of the lease. When the lease period ended and the lease was no longer in effect, Wells prevailed upon the lessor for various extensions of time to permit him to remove trees and shrubbery. These extensions of time were given, and Wells was given permission to remove those items, notwithstanding they belonged to the lessor under the terms of the lease.

From the beginning of the lease period until after it expired, Wells did not raise a finger of protest. He did not utter a word of chagrin, anger or dismay. He did not admonish, or accuse anyone of anything. It was not until FVC filed an action to obtain restitution of the property that Wells was moved to put in writing his alleged pent-up grievances, and this he did through a letter to the Rockefellers from his attorney in early 1982.

He then proceeded to ignore the present action in favor of beginning his own lawsuit, some fourteen years after the events giving rise to his claim. He made the conscious decision to advance his own lawsuit rather than defend the instant case, for one very obvious reason. In order to bring his claim within the period of the statute of limitations, he required an overt act of recent vintage as part of an ongoing conspiracy. Unless he could show such a conspiracy almost up to the present day, all of his claims would fall before the statute of limitations.

He "zeroed in" on the lawsuit herein, and he made the FVC attempt to evict Wells from the leased property the last overt act. Paragraph 47 of Wells' amended answer and counterclaim alleged that the filing of this lawsuit by FVC on December 28, 1981, was the "culmination" of the conspiratorial scheme of FVC and others. The strategy in this respect was apparent at the February 23, 1983, hearing in Civ. No. 82-212. At that time, the Court suggested that any defenses to the FVC eviction action should have been affirmatively raised in an answer in this present action. Counsel for Wells responded:

"No, your Honor, there cannot be a [claim for] wrongful eviction unless there's an eviction."

Wells v. Rockefeller, Civ. No. 82-212, Hearing Transcript, February 23, 1983, at 40.

As to the error in the summons, counsel for Wells was not ignorant of the law and the time provisions for response to actions where service is obtained by certified mail. To the contrary, he was more than familiar with these provisions, and more importantly, with the statute of limitations on tort claims arising in 1967 and 1968.

It is axiomatic from any study of Third Circuit decisions that default judgments are not favored, because of the rule which prefers having matters determined on their merits. There is nothing in appellate case law or anywhere else, however, that suggests that this Court must be captive to the litigant who has no merit to his position. Elementary considerations of fairness to that litigant's oppo-

623

nents dictate that they should not be put through the drawn out process of obtaining a final determination after lengthy maneuvering which on its face can be readily made at this juncture.

The motion of the defendant to reopen the default judgment will be denied.

## ORDER

THIS MATTER is before the Court on Defendant's Motion to Set Aside a Default Judgment, Motion for Leave to File an Answer and Counterclaim and a Motion for Joinder of Additional Parties. The premises considered, the memorandum attached, it is hereby

ORDERED:

THAT the motions are DENIED.