**BENOIT JOSEPH, Plaintiff**

v.

**HESS OIL VIRGIN ISLANDS CORPORATION, et al., Defendants**

Civil No. 1986/89

District Court of the Virgin Islands

Div. of St. Croix

October 27, 1987

CAREY-ANNE MOODY, ESQ., and EDWARD H. JACOBS, ESQ. (LAW OFFICES OF JACOBS & BRADY), St. Croix, V.I., *for plaintiff*

STACY' L. WHITE, ESQ. (LAW OFFICES OF BRITAIN H. BRYANT), St. Croix, V.I., *for defendant Hess Oil Virgin Islands Corporation*

RICHARD E. DALEY, ESQ. (LAW OFFICES OF PATTIE & DALEY), St. Croix, V.I., *for defendant Combustion Engineering, Inc.*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

We adopt in this case the discovery rule for determining the date of accrual of an asbestosis cause of action. The Virgin Islands two-

year personal injury statute of limitations will be tolled until a plaintiff knows or has reason to know of his asbestos-related injury and its cause. However, because it is uncontroverted in the case herein that the plaintiff knew of his injury and its cause more than two years prior to commencement of this suit, his claim will be dismissed.

## I. FACTS

Benoit Joseph was a Litwin Panamerican Corporation ("Litwin") insulator who worked at the Hess Oil Virgin Islands Corporation ("HOVIC") refinery, and the St. Croix Petrochemical ("SCPC") plant. His employment ran from 1967 through early 1986. On April 25, 1986, he filed this suit against those two corporations, among others, for damages arising out of injuries resulting from his exposure to asbestos. This exposure is alleged to have occurred at various times throughout his employment period. Joseph, however, contends that he did not know of his injuries and their cause until March 1986.

The defendants disagree and have moved for summary judgment. They submit the following undisputed deposition testimony of Joseph:

Q. Did you put any asbestos insulation on in 1985?

A. Yes. That that they had.

Q. You did?

A. Yes.

Q. How do you know it had asbestos in it?

A. That's the secret. I don't know about it until it was all gone. Until lately.

Q. Lately when?

A. When Frank, the white supervisor, was work the pipe. When we take out the metal, he say "Come down. Come down. That is asbestos. Let me go look for protection for you." and we come down. When he go to get the protection he lay off. They fire him, that's the protection he get.

Q. And when did that happen?

A. That happened I think is around '61— let me see. Around '81, '82. Something like that, I can't remember exactly.

Q. But the best you can—

A. I can't remember exactly, I think in the '80's that happen.

Q. Do you know this man's name who got fired?

A. That's Frank. He was the supervisor. Frank. Everybody call him Frank.

Q. And he was a white man?

A. White man. Yes.

Q. And that was the first time you learned that the product you were working on had asbestos in it?

A. That the first time I knew asbestos is bad.

Q. When was the first time you knew or thought a product you worked with had asbestos in it. That's what I'm trying to learn?

A. When I know it have asbestos in it?

Q. Yes

A. I tell you, I never know it have asbestos in it, I never know nothing about asbestos. I don't know if it bad or anything until the man tell me, come down from the pipe, that's dangerous, it's asbestos.

Q. So, it was in the '80's when you learned that you were working with asbestos?

A. In the '80's, that the time I learn asbestos is a bad thing. I never know that before.

Joseph dep. at 39–40.

They also submit that Joseph's testified further as follows:

Q. You started feeling—

A. Yes.

Q. Not right about four years ago?

A. Yes, and mostly troubling me more at night than in the day.

Q. If you are lying down you mean?

A. No. Even when night come it looking like when I'm no working my blood coming cold so I can feel it more. You know. I can't climb a tower as I used to. I can't do the work fast as I used to, so I know I sick. But, the main thing, which

304

they say to anybody that's sick, "Don't come to the work, stay out, take off."

Q. Mr. Joseph: The day that this fellow Frank told you that there was asbestos on the pipe—

A. Yeah.

Q. Were you already feeling ill by that time?

A. Yeah. A long time before that.

Q. A long time before that?

A. Yeah.

Q. When he told you there was asbestos on the pipe, did you figure out that day you might be, you were ill or you might be feeling ill because of asbestos?

A. I figure that because I come to know it is a bad thing.

Q. On that day?

A. Yes, and I figure that is the thing that make me sick.

Joseph dep. at 135–136.

It is undisputed that the white insulation supervisor named "Frank" to whom he refers in his deposition is Frank Purjet who resigned from Litwin on November 11, 1982. Additionally, it is known that Joseph was examined by Dr. Alejandro C. Cebedo at the request of his employer, Litwin, in late 1982 subsequent to the Purjet incident to which Joseph refers. Dr. Cebedo referred Joseph to Dr. Francis J. Farrell who submitted Joseph to a pulmonary function test. The November 30, 1982, objective results of that test found, in reference to Joseph's respiratory complaints, that Joseph had:

(1) decreased forced vital capacity of the lungs;
(2) Normal FEVI/FVC ratio;
(3) decreased MMEF relative to the decreased forced vital capacity;
(4) a restrictive process in patients preliminary function such as diffuse interstitial lung disease;
(5) the MMEF is decreased out of proportion to the degree of restriction, suggesting a superimposed airway obstruction.

Combustion Engineering Inc.'s ("CEI") Exh. A. The clinical summary of that test revealed a slightly restrictive ventilatory

defect and suggested a superimposed airway obstruction. CEI Exh. A.

Joseph never asked for these results of the test but he was presented with and signed a paper which summarized the results. Joseph dep. at 81–82. Defendants argue that this uncontroverted evidence requires us to find as a matter of law that Joseph knew of his injury and its cause more than two years prior to his institution of this suit.[1] Thus, they argue, that even upon adoption by the Court of the discovery rule, Joseph's action is time-barred. We now turn to those issues.

## II. DISCUSSION

██ Summary judgment is appropriate under Fed. R. Civ. P. 56 after discovery upon motion "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552–53 (1986). The standard with which we view the evidence is akin to the directed verdict standard under Fed. R. Civ. P. 50(a). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2512 (1986). Because the exact procedure for determining the accrual of Joseph's alleged cause of action is in issue, we first turn to that question.

### A. The Discovery Rule

The Virgin Islands two-year personal injury statute of limitations is silent as to the accrual of a cause of action.[2] Moreover, no prior case law has filled this void for an asbestos cause of action.[3]

---

[1] HOVIC's motion for summary judgment was joined by several of the defendants in this action.

[2] The statute provides in relevant part:

Civil actions shall only be commenced within the periods prescribed below after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute:

. . .

(5) *Two years—*
(A) An action for . . . any injury to the person or rights of another not arising on contract and not herein especially enumerated, . . .
5 V.I.C. § 31(5)(A) (1977).

[3] In fact as to asbestos claims, we recently held that exposure to asbestos alone, without a demonstrated injury is insufficient to state a cause of action in the Virgin Islands. Purjet v. Hess Oil Virgin Islands Corp., 22 V.I. 147 (D.V.I. 1986).

Traditionally, the statute of limitations begins to run upon the occurrence of the essential facts which constitute the action, or from the time of injury and damages. Simmons v. Ocean, 19 V.I. 232, 544 F. Supp. 841, 842 (D.V.I. 1982). A modern approach, which Joseph urges upon us, tolls that statute until the plaintiff knows of his or her injury and its cause, or has reason to know of the injury and its cause. See, e.g., Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 553 (3d Cir. 1985) (applying Pennsylvania Law).[4]

This rule is particularly applicable in toxic tort suits where the injury resulting from exposure to a deleterious substance manifests itself over time. Urie v. Thompson, 337 U.S. 163, 176 (1948). This is because the injury and/or its cause is not immediately evident to the victim. Ciccarelli, 757 F.2d at 553.

The question in asbestosis cases is often addressed from the time when the effect of the asbestosis first manifests itself and becomes physically ascertainable. Schweitzer v. Consolidated Rail Corp., 758 F.2d 936, 942 (3d Cir. 1985), cert. denied, 474 U.S. 864, 106 S.Ct. 183 (1985) (applying federal law in FELA cases); Bendix Corp. v. Stagg, 486 A.2d 1150 (Del. 1984). There is no doubt, however, that asbestos-related injuries are of the type subject to the discovery rule. See, e.g., Ciccarelli, 757 F.2d at 553; Bendix, 486 A.2d at 1152; Neubauer v. Owens Corning Fiberglas Corp., 686 F.2d 570 (7th Cir. 1982) (predicting Wisconsin law); Fusco v. Johns-Manville Products Corp., 643 F.2d 1181 (5th Cir. 1981) (applying Texas law); Karjala v. Johns-Manville Products Corp., 523 F.2d 155, 158 (8th Cir. 1975) (applying Minnesota law).

The policy reasons for application of the discovery rule have been adequately discussed by the case law. See, e.g., Vispisiano v. Ashland Chemical Co., 107 N.J. 416, 527 A.2d 66 (N.J. 1987). The precedents already cited address its frequent use in asbestos

---

[4] The discovery rule has been applied in the Virgin Islands in the following circumstances: Lawaetz v. Bank of Nova Scotia, 655 F. Supp. 1278, 1282 (D.V.I. 1987) (applying discovery rule to accrual of RICO claims); Fountain Valley Corp. v. Wells, 19 V.I. 607; 98 F.R.D. 679 (D.V.I. 1983), aff'd 728 F.2d 209 (3d Cir.), cert. denied, 471 U.S. 1107 (1985) (applying discovery rule to accrual of fraud claim); Ingvolstad v. Young, 19 V.I. 115 (D.V.I. 1982) (applying discovery rule to accrual of legal malpractice claim); Phillips v. Taylor, 18 V.I. 437 (D.V.I. 1981) (applying discovery rule to accrual of medical malpractice claim).

litigation. Accordingly, we will apply the rule here without further discussion.[5]

■■ Therefore, in the Virgin Islands the two-year personal injury statute is tolled until (1) a plaintiff knows that he has an asbestos-related injury and its cause by virtue of the physical manifestation of the effects of the disease; or (2) the plaintiff has reason to know of his asbestos injury and its cause through the exercise of reasonable diligence. Cowgill v. Raymark Industries, Inc., 780 F.2d 324 (3d Cir. 1985) (applying Pennsylvania law). Of course, the burden is upon the plaintiff to establish that the discovery rule should apply to his or her case. Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir. 1985) (applying Pennsylvania law).[6] We now apply this rule to the facts.

## B. *Joseph's Knowledge*

Joseph refers us to the facts in the Third Circuit case of Cowgill v. Raymark Industries, Inc., supra for the proposition that summary judgment is inappropriate here. In Cowgill, the question was whether there was a material issue as to whether the plaintiff should have known by the exercise of reasonable diligence whether he had been injured because of his exposure to asbestos. 780 F.2d at 330.

The Circuit viewed the evidence in the light most favorable to the plaintiff. The plaintiff left his employ in which he handled asbestos in 1961. In 1979 he received a letter and a telephone call from his employer and was invited to his employer for a physical examination. He was examined in November 1979. Id. at 325. Neither the original letter or call had made reference to the plaintiff's asbestos exposure, and the plaintiff testified by way of deposition that the doctor who did the 1979 examination never

---

[5] In Urie, the Supreme Court eloquently stated the policy rationale behind the use of this rule:

> We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights . . . .

337 U.S. at 170.

[6] We recognize that the Pennsylvania discovery rule no longer requires the causal link to be known. Van Buskirk, supra at 498 n.16 (citation omitted). We believe, however, that the plaintiff's knowledge that his injury is caused by asbestos is an important factor in deciding whether to toll the statute of limitation.

informed him that he had pleural thickening or any signs of asbestosis. Id. at 330. That doctor was not sure whether he had told the plaintiff of his symptoms. Id.

It was not until November 1981 that the plaintiff in Cowgill was notified by letter that he had asbestosis. The Circuit held that those facts were insufficient to establish as a matter of law that the victim reasonably should have known that he had asbestosis within two years of his suit. Id. This was in light of evidence that the plaintiff had participated in discussions at his former employer's about asbestos related diseases. Id.

The evidence before us is considerably different. First, it is undisputed that Joseph felt sick as early as 1982, more than two years before he started this action.

Q. Mr. Joseph: The day that this fellow Frank told you that there was asbestos on the pipe—

A. Yeah.

Q. Were you already feeling ill by that time?

A. Yeah. A long time before that.

Q. A long time before that?

A. Yeah.

Joseph dep. at 135. Second, while prior to the Frank Purjet incident to which Joseph refers, he might not have attributed his sickness to exposure to asbestos, he further testified that as of that day in 1982 he did attribute his sickness to asbestos.

Q. When he told you there was asbestos on the pipe, did you figure out that day you might be. You were ill or you might be feeling ill because of asbestos?

A. I figure that because I come to know it is a bad thing.

Q. On that day?

A. Yes, and I figure that is the thing that make me sick.

Joseph dep. at 136.

Thus, this case is distinguishable from Cowgill because here Joseph knew he was sick, and he attributed his sickness to asbestos. He also knew of the existence of a doctor's report. The plaintiff in Cowgill never knew he was sick, therefore, he could never have attributed his injuries to asbestos. This case is also different from

Van Buskirk, 760 F.2d at 498, where the plaintiff had no knowledge of the causal relationship between his lung condition and asbestos.

Third, it is undisputed that as of the November 30, 1982, report issued by Dr. Cebedo, Joseph had symptoms of asbestosis. Joseph admits he signed a summary of the report. The medical report is important not so much on the issue of whether or not Joseph read it, but rather it is confirmation of Joseph's suspicion that he had an asbestos-related injury in late 1982. It is also important because it emphasizes Joseph's lack of diligence in bringing this action.

Joseph attempts to justify this lack of diligence by suggesting that the report said nothing of asbestos. However, he simply does not put at issue the findings of the report. Clearly, if Joseph had inquired of a doctor as to its meaning, he would have learned that he had symptoms of asbestosis.[7] This is especially damaging because of his own statement that he felt sick long before the Purjet incident and that as of the Purjet incident, in 1982 he attributed that sickness to asbestos. Joseph clearly demonstrated a lack of reasonable diligence.

■ Joseph's lack of education does not excuse his responsibility for acting on the facts of which he was aware. See Ciccarelli, 757 F.2d at 556 (mere mistake, misunderstanding or lack of knowledge on the part of the plaintiff does not toll the statute of limitations for one charged with using reasonable diligence to inform himself of facts or circumstances upon which the right of recovery is based). This is particularly true when Joseph testified that he did not ask Dr. Cebedo or Dr. Farrell for the results of the 1982 examination because he figured they would give it to him. Joseph dep. at 81. Truly, he sat too long on his rights.

Joseph argues that he could not have brought a claim for an asbestos-related injury until he was diagnosed with the disease. This is not an accurate statement of law. Our decision in Purjet would bar a claim until there is a demonstrable injury. Dr. Cebedo's 1982 report establishes that Joseph had such an injury, and that the specifics of the injury were discoverable to him then.

■ We recognize that under Anderson, 106 S.Ct. at 2512, we are to look at the facts in light most favorable to Joseph. In so doing we find that he has placed no material issue in dispute regarding his diligence. He, of course, has this burden. We conclude,

---

[7] See Peters and Peters Sourcebook on Asbestos Diseases: Medical, Legal and Engineering Aspects, B4–B11 (1980).

therefore, as a matter of law, that Joseph knew of his injury and its cause, or had reason to know of his injury and its cause as early as late 1982 or early 1983. Clearly, the disease was already physically manifest to him. Therefore, the Virgin Islands statute of limitations began to run then, and Joseph's claim expired well before the institution of this suit.

## III. CONCLUSION

In this case we adopt the discovery rule as the method for determining the accrual of a cause of action for and asbestos-related injury. The plaintiff's complaint here, however, will be dismissed as a matter of law because he knew or had reason to know of his injury and its cause more than two years prior to the institution of this suit.

## SUMMARY JUDGMENT

THIS MATTER is before the Court on motion of the several defendants for summary judgment. Having filed an opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the defendants' motion for summary judgment be, and the same, is hereby GRANTED; and further

THAT the plaintiff's complaint is DISMISSED WITH PREJUDICE.