LESLIE DOWNING, Plaintiff

v.

FORTUNA BAY ESTATES, INC., Defendant

Civil No. 298/1971

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 21, 1980

---

THOMAS D. IRELAND, ESQ., St. Thomas, V.I., *for plaintiff*

ROGER L. CAMPBELL, ESQ. (LOUD & CAMPBELL), St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION AND ORDER

This is an action for specific performance on an alleged contract to sell land, which requires the court to determine the applicability of the Virgin Islands statute of frauds. 28 V.I.C. §§ 241–246.[1]

---

[1] The matter came on for trial on February 20, 1973 and April 10, 1973 before the late Judge Cyril Michael, who retired before he rendered a decision. Both parties have now stipulated that the undersigned may decide the matter based on the trial transcript and exhibits admitted at the trial.

Sometime in 1964 the plaintiff Leslie Downing entered into a contract with the defendant Fortuna Bay Estates, Inc. to purchase two lots, Parcel Nos. 4-4-4 and 4-4-6, Estate Fortuna, No. 8 West End Quarter, St. Thomas, Virgin Islands. The plaintiff finished paying for the lots sometime in 1967. Shortly thereafter, on or about July 27, 1967, the plaintiff spoke with John S. Bensen, a real estate broker, about buying two more pieces of property. These pieces now are owned by the defendant, and were located to the north of and contiguous to parcels 4-4-4 and 4-4-6.

Mr. Bensen was treasurer of the defendant in 1964 and 1965. He also was vice-president of defendant at sometime before and/or after April of 1968.[2] What is not clear, however, is whether Mr. Bensen was an officer of Fortuna Bay Estates at the time he spoke with plaintiff on July 27, 1967. It was on that date that Mr. Bensen signed and gave to the plaintiff a written memorandum on Antilles Real Estate stationery, but the capacity in which Mr. Bensen signed was not indicated. The memorandum stated:

> Received from Leslie Downing the sum of $100 representing a deposit of $50 on each of two lots of Estate Fortuna. One is parcel 5-A-1-3 and the other is as yet unsurveyed but located to the west of 5-A-1-3. This deposit holds the parcels until the roadway is constructed and the parcel surveyed.
>
> John S. Bensen<br/>/s/ John S. Bensen

Price of parcel 5-A-1-3 is $3500.00.
Price of unsurveyed parcel is XXXXX $2500. and parcel will be at least .50 of an acre.

At the time the memorandum was signed, a real estate development contract was in force between the defendant and Antilles Land Development, Inc.,[3] of which Mr. Bensen also was an employee or principal. That contract authorized Antilles Land Development to enter a contract for the sale of defendant's property under terms "providing for payment within 90 days and a 10 per-

---

[2] A deed to an unrelated piece of property owned by the defendant was executed by Mr. Bensen as vice-president of the defendant on April 10, 1968.

[3] The exact relationship between Antilles Real Estate and Antilles Land Development, Inc. is not revealed by the trial transcript or exhibits admitted at trial. The parties appear to have construed the two as being one and the same. As a result the court will construe the two as being one entity for the purposes of this action.

cent deposit on the sales price," or "calling for semi-annual payments over a period of five years, upon a deposit of 25 percent and with 6 percent per annum on the unpaid balance."

On July 27, 1967, the property at issue, which was a part of that parcel known as lot 5-A-1, was owned by Winston S. deLugo and Ronald deLugo, rather than the defendant. The property was deeded on July 27, 1970 to the defendant by the deLugos, who were officers of the defendant.

Before trial, sometime in 1969 or 1970, Stackler Realtors assumed management of defendant's property, succeeding Antilles Land Development, Inc. Stackler Realtors supervised the drawing of a new development plan for the defendant, which plan did not include the two parcels as described in the memorandum of July 27, 1967. As a result, at the time of the trial the two parcels were part of "one large undivided piece of acreage." Moreover, a parcel surveyed in another area, which was not contiguous to lots 4-4-4 and 4-4-6, was subsequently labeled as lot 5-A-1-3. Sometime after Stackler Realtors assumed management of defendant's property, plaintiff inquired as to the status of the parcels described in the memorandum. Stackler Realtors told plaintiff that Ron deLugo, an officer of the defendant, did not wish to sell those parcels separately from a larger portion and Stackler Realtors offered to return plaintiff's $100 deposit. Plaintiff, however, refused to accept it and instituted this action for specific performance, relying on the July 27, 1967 memorandum.

When the matter came to trial in 1973, at least one of the two parcels described in the July 27, 1967 memorandum still had not been surveyed. In addition, the road that was referred to in the memorandum was not constructed, although an exploratory road had been constructed and abandoned.

Defendant raises the statute of frauds as an affirmative defense. It argues first that the July 27, 1967 memorandum, the alleged contract, does not satisfy the Virgin Islands statute of frauds, 28 V.I.C. § 242, which requires an agent to be under written authority before entering a contract such as the one plaintiff seeks to enforce. Second, the defendant argues that the description of the property in the memorandum is so vague, indefinite, inadequate and conjectural as to prohibit specific performance. Finally, the defendant argues that the complaint fails to state a claim upon which relief can be granted because the alleged contract was conditioned upon subsequent actions that have not occurred.

■ The Virgin Islands statute of frauds requires contracts for sale of land or an interest in land to be in writing or evidenced by a note or memorandum. The law also requires the contract, note or memorandum to be signed by the party to be charged or by his lawful agent under written authority. 28 V.I.C. § 242. The agreement that the plaintiff seeks to enforce was noted by a written memorandum. It does not, however, satisfy the statute of frauds.

■■ As stated, the memorandum is written on Antilles Real Estate stationery and is signed by John S. Bensen, but there is no indication of the capacity in which Bensen signed. There also is no indication that the defendant, Fortuna Bay Estates, Inc., is the principal. Even though a contract may not disclose the principal, a contract signed by a properly authorized agent is sufficient to bind the principal under the Virgin Islands statute of frauds. Restatement (Second) Agency § 153 (1958).[4] Consequently, if Bensen was the defendant corporation's properly authorized agent when he signed the July 27, 1967 memorandum, the agreement would be enforceable if it satisfied other legal requirements. In order for Bensen to be considered as a properly authorized agent for Fortuna Bay Estates in this instance, the statute of frauds requires that he have such authorization in writing. 28 V.I.C. § 241(a)(2). Here, however, even assuming that Bensen was acting as agent for the defendant, the court cannot find that he was an agent under any written authority as required by the statute of frauds.

The plaintiff failed to produce any written authorization for Bensen to act as agent for the defendant. While the plaintiff did produce a real estate development contract between the defendant Fortuna Bay Estates and Antilles Land Development, Inc.,[5] that writing only authorized Antilles Land Development to sell the defendant's property upon certain terms. The terms of the memorandum that plaintiff seeks to enforce, however, in no way comport with the terms of the real estate development contract. In fact, as opposed to a contract for sale, the court construes the memorandum

---

[4] The rules of the common law, as expressed in the restatements of law approved by the American Law Institute, shall be the rules of decision in the courts of the Virgin Islands in the absence of local laws to the contrary. 1 V.I.C. § 4. See Varlack v. S.W.C. Caribbean, Inc., 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977); but see Murray v. Beloit Power Systems, Inc., 450 F.Supp. 1145 (D.V.I. 1978), aff'd sub nom. Murray v. Fairbanks Morse, 16 V.I. 647 (3d Cir. 1979).

[5] See page 23 supra.

as being an option to purchase, which the real estate development contract did not authorize its agent, Antilles, to create.

■ Where an agent has competent written authority to sell land at certain specified prices and on certain prescribed terms, this does not authorize him to sell on different terms. Instead, if he wishes to sell under different terms, he must obtain new written authority. Kozel v. Dearlone, 144 Ill. 23, 32 N.E. 542 (1829). No new or other writing was produced. Accordingly, the court must find that even if Bensen was acting as an agent for the defendant through Antilles, he exceeded his written authority when he signed the memorandum that the plaintiff seeks to enforce.

■ The plaintiff argues, however, that even if Bensen did not have written authority to execute the July 27, 1967 agreement, he had apparent authority to do so on behalf of Fortuna Bay Estates because Bensen, as an officer, executed various deeds on behalf of the defendant.

> Actual authority has been defined as "the authority that the principal expressly or explicitly gave the agent." Apparent authority " 'is power to bind the principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted.' "

United States of America v. Martinez, No. 79-1189 (3d Cir. Jan. 14, 1980) (footnotes omitted).

The creation of apparent authority is controlled by § 27 of the Restatement (Second) of Agency (1958), which provides:

> Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him.

As the defendant correctly points out, the crucial question in determining the existence of apparent authority is what representations were made to the third party, or, in this instance, the plaintiff Downing. Amritt v. Paragon Homes, Inc., 9 V.I. 570, 474 F.2d 1251 (3d Cir. 1973); Restatement (Second) of Agency § 27, Comment a (1958). The representations may come directly to the third person from the principal, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the

agent and shown to the third person, or from third persons who have heard of the agent's authority through authorized channels. Id. Furthermore, the third person must reasonably believe that the agent is authorized to act on behalf of the principal. Restatement (Second) of Agency § 8, Comment c (1958). The plaintiff did not, however, offer any evidence of any such representations being made at the time the agreement was executed or any evidence that the plaintiff believed Bensen was authorized to execute the agreement on behalf of Fortuna Bay Estates. While apparent authority may be created by a principal appointing a person to a position that carries with it generally recognized duties, authority to perform those duties is created only as to those persons who know of the appointment or reasonably believe the person has such authority. Id. Again, the plaintiff offered no evidence that at the time the agreement was executed he believed Bensen was an officer of the defendant, or that he knew that Bensen had previously been an officer of defendant.[6] Plaintiff merely introduced various deeds signed by Bensen as an officer of the defendant at various times before and after the July 27, 1967 agreement. Thus the argument of apparent authority avails plaintiff of nothing.[7]

 Plaintiff argues further, however, that even if Bensen exceeded his authority, the defendant ratified the agreement by failing to repudiate it for 2½ years. The court cannot accept this argument. Where a statute requires an agent to be under written authority, a principal can later ratify the transaction of an agent that exceeded that authority only by executing a written authorization or agreement. Restatement (Second) Agency § 30, Comment b (1958); Throndson v. C.I.R., 457 F.2d 1022 (9th Cir. 1972). Plaintiff produced no such written authorization or agreement. Consequently, the court cannot find that the defendant ratified Bensen's agreement.

 In addition, even if the court could find that Bensen was acting as defendant's agent under written or apparent authority or that the defendant ratified Bensen's acts, such a finding would not

---

[6] Consequently, the court need not decide whether the generally recognized duties of a vice-president or treasurer of a corporation include executing agreements or options for the sale of land.

[7] Although not clearly enunciated, plaintiff appears to contend that the deeds signed by Bensen as an officer of defendant show actual authority of Bensen. Assuming that such actual authority exists, which was not disclosed by the evidence, this court is not prepared to hold that the actual authority to sign a deed includes the actual authority to execute an agreement such as the one at issue.

27

avail the plaintiff here. To be enforceable under the statute of frauds, a contract creating an interest in real estate must contain a reasonably adequate description of the land. Roebuck v. Hendricks, 3 V.I. 680, 255 F.2d 211 (3d Cir. 1958). A court may grant specific performance of agreements relating to the purchase of land only if the land is described in the agreement with reasonable particularity. Wills v. Young, 3 V.I. 674, 255 F.2d 65 (3d Cir. 1959).

This requirement does not necessitate a legal description of the type required for conveyances, but it does mean

> that the description should be definite enough for a competent surveyor to find the land with the use only of the description in the contract or to extrinsic sources recited in the agreement.

Roebuck v. Hendricks, 3 V.I. at 684, 255 F.2d at 213; Wills v. Young, supra. The only description in the memorandum in this case is "two lots of Estate Fortuna. One is Parcel 5-A-1-3 and the other is as yet unsurveyed but located to the west of 5-A-1-3." It can hardly be said that a surveyor could define the boundaries of lot 5-A-1-3 of Estate Fortuna without having the metes and bounds of that lot or at least a map of the surveyed lot. Here no metes and bounds are supplied in the memorandum. In addition, no map was referred to in the memorandum, nor was such a map admitted into evidence. Clearly, if a surveyor could not define lot 5-A-1-3, it would be impossible to find an unsurveyed parcel located to the west of lot 5-A-1-3. Thus, the court believes the description of the property is insufficient to satisfy the statute of frauds or to support a decree of specific performance.

Finally, even assuming authority and an adequate description of the property, the agreement could not be enforced today because the option is contingent upon the property being surveyed and a roadway being constructed, neither of which had been done at the time of trial. Restatement of Contracts § 250 (1932); Restatement (Second) of Contracts §§ 250, 251 (Tent. Draft Nos. 1–7, 1973).

Accordingly, it is

ORDERED that plaintiff's complaint be and hereby is dismissed with prejudice, and judgment is granted to the defendant, and defendant shall refund plaintiff his $100 deposit.