# WILLARD JOHN, Plaintiff

## v.

# ALLAN A. CHRISTIAN and MARIA MALDONADO, Defendants

Civil No. 536/1988

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

June 11, 1991

DOUGLAS L. CAPDEVILLE, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

ALLAN A. CHRISTIAN, ESQ., Frederiksted, St. Croix, V.I., *pro se*

GEORGE W. CANNON, JR., ESQ. (ROSS AND CANNON), Frederiksted, St. Croix, *for defendant Maldonado*

CABRET, *Judge*

## MEMORANDUM OPINION

This action arose out of a contract for the sale of a parcel of real property known as Plot 54 of Estate Frederikshaab, Frederiksted, St. Croix. The Plaintiff sued for the return of funds he paid pursuant to the contract of sale. During the pendency of the case the parties stipulated to return of the funds. Plaintiff is now before the Court seeking interest for the time period the funds were withheld, as well as costs and attorney's fees. For the reasons which follow, Plaintiff's motion shall be granted.

### I. FACTS

From 1981 through 1986, Maria Maldonado (hereafter referred to as "Maldonado"), retained the services of Attorney Allan A. Christian (hereafter referred to as "Christian") to represent her in a number of civil actions which culminated in Maldonado's ownership of Plot 54 Estate Frederikshaab, Frederiksted, St. Croix (hereafter referred to as "Plot 54" or "the property"). As of 1987, however, Christian had not been paid his fees for representing Maldonado. As a result, Christian, who besides being an attorney is also a former real estate broker, decided to sell the property in order to collect his fees. Maldonado disputed the amount of attorney's fees owed to Christian, and even hired an attorney, Frank Ford, III, (hereafter referred to as "Ford") to represent her in that dispute.

In June of 1987, the Plaintiff, Willard John (hereafter referred to as "John"), executed a contract to purchase Plot 54 on installment terms. The contract of sale was signed by Christian as "Seller's Agent".[1] The last line of the contract stated as follows: "This offer to purchase is subject to ratification by the owner". Just above the signature line provided for the owner, Maria C. Maldonado, the contract set forth in capital letters, the words "APPROVED BY".

Pursuant to the contract John made payments totalling $10,536.25. By January of 1988, however, it became clear to John that repeated efforts by Christian to get Maldonado to sign the contract had failed, and that Maldonado did not intend to go through with the

---

[1] In the contract John agreed to purchase the property for the sum of $20,500 upon the following terms: (a) The sum of $2,050 to be paid upon execution of the contract; (b) The sum of $7,000 to be paid on or before July 24, 1987; and (c) The balance of $11,450 to be paid quarterly at 10% per annum on the unpaid balance, in installments of $1200.

sale. As a result, on January 25, 1988, John wrote a letter to Christian stating that he considered the contract null and void, and demanding the return of his funds with interest.

By letter dated January 27, 1988, Christian responded to John as follows:

Dear Mr. John,

Don't send me anymore certified mail. I will not stand in line to collect mail when I pay rent for a post office box.

I agree with your statement of January 25, 1988 except that the agreement I signed as Ms. Maldonado's agent is not now "null and void." If you have a basis for the declaration, please let me know.

The ten thousand five hundred thirty-six dollars twenty-five cents ($10,536.25) you have paid to date will *not* be refunded. In fact, your January 1988 payment is late.

I have told you, repeatedly, that Ms. Maldonado's signature is *not* needed on the contract. Her name was stated thereon for notice purposes only. Whether she initials the recorded agreement or not does not affect your obligation.

By copy of this letter, with your January 25, 1988 letter, I am asking Ms. Maldonado to respond to you directly, for I have done everything that I can do as Ms. Maldonado's agent.

Very truly yours,
/S/
Allan A. Christian

Several other correspondences passed among the parties. By letter dated February 12, 1988, Maldonado's attorney, Ford, informed John that Christian did not represent Maldonado as a broker, and that there was no written brokerage agreement between Christian and Maldonado. Ford also wrote Christian on the same date, advising him that Maldonado would not be signing the contract for sale, and asking him to return all funds collected from Mr. John. Christian failed to return any funds.

On March 4, 1989, John again wrote to Christian. This time John demanded that Christian return his money on the basis that Christian did not represent Maldonado as a broker. Along with his letter, John sent Christian a copy of the February 12, 1988, letter he had received from Ford. In a response letter dated March 24, 1988, Christian wrote John as follows:

Dear Mr. John:

I do not have any authority from Maria Maldonado to rescind her agreement with you nor to return the money you paid.

However, if Ms. Maldonado wants to return the money you paid to date, she may do so by sending you her check.

I have not received any mail from you and if you want me to have that mail, send me copies.

Your threat of suit may resolve your problem. I have no problems responding to your claims. You seem like an otherwise intelligent person who must know that when you sign an agreement, you don't unilaterally declare it "null and void" and demand your money back.

/S/
Allan A. Christian

Subsequently, on June 22, 1988, John filed this action seeking the return of all payments he had made to Christian pursuant to the contract, along with accrued interest, costs and attorney's fees. Christian answered, generally denying liability and asserting a crossclaim against Maldonado for attorney's fees for services rendered for her in the other litigation. Christian also deposited $10,536.25, the amount of John's payments on the contract, into the registry of the Court. The parties eventually stipulated to the payment of the deposited funds to John, and the crossclaim between Christian and Maldonado was settled. Thereafter, John filed a Motion for Interest, Costs and Attorney's Fees against Christian.[2] Eight days prior to the hearing before this Court, John filed a Motion for Summary Judgment. The Court denied the motion because it was untimely under Federal Rule of Civil Procedure 56(c).[3]

---

[2] This case was originally before another judge who had the matter under advisement after a hearing on the motion for interest, costs, and attorney's fees. However, due to circumstances beyond the judge's control, he had to recuse himself prior to rendering a decision. Subsequently, the matter was transferred to the undersigned who then scheduled a second hearing on the motion for interest, costs, and attorney's fees.

[3] Federal Rule of Civil Procedure 56(c) requires, in pertinent part, that motions for summary judgment "shall be served at least 10 days before the time fixed for hearing."

## II. DISCUSSION

### A. *John Is A Prevailing Party*

■ Christian's first defense to an award of costs and attorney's fees is that John does not have prevailing party status because the lawsuit ended by way of settlement and therefore, no party prevailed. It is true that 5 V.I.C. § 541(b)[4] allows the Court to make a discretionary award of costs and attorney's fees only to a prevailing party. However, although the Virgin Islands Code does not define the term "prevailing party", Christian's first defense is almost frivolous, for it has long been settled in the Virgin Islands that "as long as a plaintiff achieves some of the benefits sought in maintaining a lawsuit, even though that plaintiff does not ultimately succeed in securing the judgment sought, the plaintiff can be considered the prevailing party for purposes of a fee award." Ingvolstad v. Kings Wharf Island Enterprises, Inc., 20 V.I. 314, 317 (Dist. Ct. 1983) (citations omitted), aff'd., 734 F.2d 5 (3d Cir. 1983). In the matter at hand, John filed this lawsuit to obtain the return of the funds he paid Christian for Plot 54. The money was eventually returned to John, thus there is no doubt that John is a prevailing party within the meaning of the statute and is therefore entitled to attorney's fees.

■ Christian also asserts that John cannot be considered a prevailing party because there is no causal connection between the litigation and the benefit obtained by John. It is true that in order to grant a fee award to a prevailing party, the Court must determine whether there is a causal connection between the litigation and the benefit obtained. Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897 (3d Cir. 1987). Even so, the litigation need not have been the sole cause of the benefit obtained. See Morrison v. Ayoob, 627 F.2d 669 (3d Cir. 1980). Moreover, even when a case is settled, the Court ought to determine the causal relationship. See Clark v. Township of Falls, 890 F.2d 625, 627 (3d Cir. 1989).

■ In the case at bar, it is very evident that John tried to avoid litigation by writing Christian several letters demanding the return of his payments on the land contract. It is equally evident, however,

---

[4] The pertinent part of the statute provides as follows.

"[T]here shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto . . ."

that Christian left John no recourse but to file suit. Indeed, Christian's March 24, 1988 letter to John advised him that a lawsuit would resolve his problem. The facts of this case show that but for Christian's wrongful withholding of funds, this litigation would not have ensued and but for this litigation, John's money would not have been returned. Consequently, the causal connection between this litigation and the benefit obtained, that is, the return of John's money, is irrefutable.

## B. *Christian Was Not Maldonado's Agent*

Christian's second defense to an award of costs and attorney's fees is that throughout the entire land sales transaction, he was acting as Maldonado's agent and John at all times knew this fact. Christian claims he is therefore completely insulated from liability because it was Maldonado who failed to sign the contract and Maldonado who failed to authorize him to return any money to John before suit was filed. Had he returned John's payments on the contract without Maldonado's consent, Christian alleges, he would have risked being liable to Maldonado. In support of his position, Christian cites the Restatement (Second) of Agency, § 328 (1958) which limits the liability of an authorized agent for the principal's nonperformance of a contract and provides as follows:

> An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal who he has power so to bind, does not thereby become liable to its nonperformance.

Christian can be absolved from liability on this ground only if the facts support his contention that he had authority to act on Maldonado's behalf. Contrary to Christian's claim, however, the facts of this case clearly and consistently point to an absence of any authority by Christian to act on behalf of Maldonado.

██ An agency is a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Restatement (Second) of Agency, § 1 (1958). Thus, three elements are required in order to show that an agency relationship exists: (1) manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) an understanding between the parties that the principal will be in control of the undertaking. Housatonic Valley Publishing Co. v. Citytrust, 4 Conn. App. 12, 492 A.2d 203, 205 (1985). Whether or not the

agency relationship exists is a question of fact for the trier of fact, and the burden of proof is upon the party asserting the agency relationship. Id. (Citation omitted). "It is not necessary that the parties explicitly state their intention to create an agency relationship, but their intention must be clear from their conduct." Goodway Marketing, Inc. v. Faulkner Advertising Associates, Inc., 545 F. Supp. 263, 267 (E.D. Pa. 1982). Furthermore, "when an agency relationship is to be proven by circumstantial evidence, the principal must be shown to have consented to the agency since one cannot be agent of another except by consent of the latter." Gay Jenson Farms Co. v. Cargill, Inc., 309 N.W.2d 285, 290 (Minn. 1981).

There is no evidence showing that Maldonado expressly appointed Christian her agent for selling her real property, therefore Christian relies upon circumstantial evidence in an attempt to establish the agency. He relies on the Restatement (Second) of Agency, supra, § 94, which states that "[a]n affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." Christian argues that since on its face the agreement purports to authorize Christian to act as agent and attorney for Maldonado in the sale of the property, Maldonado's receipt of the agreement and her full knowledge of its contents, coupled with her failure to repudiate, disclaim, or reject it, is an affirmance of the transaction and the agency of Christian. This argument is seriously flawed. The agreement very clearly required the approval signature of Maldonado, and expressly provided that the offer to purchase was subject to ratification by the owner. It is difficult to discern what other action Maldonado could have taken in order to repudiate, disclaim, or reject the attempted sale of her property other than refuse to sign the agreement. The agreement called for ratification and approval of the sale and agency by the performance of a specific act—the act of signing. Maldonado's steadfast and continued refusal to do that act certainly should have put Christian on notice that she was rejecting the contract. In reality, Maldonado need have done nothing other than refuse to sign the agreement in order to repudiate the sale and the purported agency created by the agreement.

Maldonado's refusal to sign is not the only evidence that she rejected the contract and the agency it allegedly created. Soon after she received the agreement she notified Christian that she disputed the amount of attorney's fees owed to him. She even hired an attorney to represent her interest in that dispute. It is abundantly clear

however, that Christian wanted to sell Maldonado's property in order to collect his legal fees.

Christian makes much ado about the fact that Maldonado may have signed the agreement were it not for the fee dispute, but again his argument lacks logic. Under the circumstances, the reason for Maldonado's refusal to sign is irrelevant, but assuming that Christian is correct, the fee dispute only confirms Maldonado's rejection of the agreement. Thus, contrary to Christian's assertions, Maldonado's conduct—her adamant refusal to approve the agreement despite repeated requests from Christian, her dispute with Christian over attorney's fees, and her hiring of legal counsel to represent her interest in the fee dispute—are all actions which manifest a clear and unequivocal intention *not* to create an agency relationship.

■ Moreover, since Christian relies on the unexecuted agreement to prove his agency for the sale of the property, once it became apparent to him that Maldonado refused to execute the agreement, he should have known that he was without authority to act on her behalf and should have immediately returned John's downpayment. The March 24, 1988, letter from Christian to John, however, proves that the alleged agency relationship was only a pretext for holding John's money hostage for the payment of Maldonado's fees. In that letter, Christian advised John that the entire matter was between John and Maldonado, and that "if Ms. Maldonado wants to return the money you paid to date, she may do so by sending her own check." However, Maldonado never received money from John, and Christian knew she was under no obligation to return money she never received. All of John's money was in the hands and control of Christian, therefore it was ludicrous for Christian to advise John that Maldonado should send him her own check to return funds held by Christian, funds which she never authorized him to accept in the first instance. In this case, the Court must agree with Plaintiff's conclusion that Christian retained Plaintiff's money "not as an escrow agent on behalf of Maldonado, but as a collection agent on behalf of himself, i.e., acting with the intended purpose of offsetting the outstanding monies owed to him by Maldonado."[5]

## C. *The Agreement Falls Within The Statute of Frauds*

Regardless of the supposed agency relationship, Christian should have returned John's payments on the contract because Maldonado's

---

[5] Plaintiff's Motion for Summary Judgment dated August 8, 1990 at 9–10.

refusal to sign the agreement rendered it legally void and unenforceable under the Virgin Islands Statute of Frauds, 28 V.I.C. §§ 241–246 (1976). Section 241 of that statute provides as follows:

> Every contract for the leasing for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority.

Thus, pursuant to this substantive law, it is crystal clear that a land sales contract must be in writing and signed by the seller or his agent and that where the agent signs, he must have written authority to bind the seller.

In Downing v. Fortuna Bay Estates, Inc., 17 V.I. 20 (Terr. Ct. 1980), a case with a procedural setting similar to the one at bar, the Court held that a contract for the sale of certain real property was unenforceable due to noncompliance with the Statute of Frauds. In that case the plaintiff had contracted to buy property owned by the corporate-defendant. A memorandum of the sale was made, but it was not signed by the defendant. The memorandum was instead signed by the defendant's purported agent. The Court in no uncertain terms held that the plaintiff's failure to show that the defendant executed the written memorandum, or his failure to produce a writing that authorized the purported agent to sell the property on behalf of the defendant, rendered the written memorandum unenforceable. The Court made very clear that, even if an agent is authorized to sell real estate on behalf of his principal, section 241(a) (2) of the Statute of Frauds requires that such authorization be in writing. Id. at 25. Thus, the Court held that "even assuming that Bensen [the purported agent] was acting as agent for the defendant, the court cannot find that he was an agent under any written authority as required by the Statute of Frauds." Id. at 25.

In Downing, the plaintiff also argued, as does Christian in the case at bar, that the defendant ratified the agreement by failing to repudiate it. In response to that argument the Court stated as follows:

> Plaintiff argues further, however, that even if Bensen exceeded his authority, the defendant ratified the agreement by failing to repudiate it for 2-½ years. The court cannot accept this argument. Where a statute requires an agent to be under written authority, a principal can later ratify the transaction of an agent that exceeded that authority only by executing a written author-

138

ization or agreement. Restatement (Second) Agency § 30, Comment b (1958); Throndson v. C.I.R., 457 F.2d 1022 (9th Cir. 1972). Plaintiff produced no such written authorization or agreement. Consequently, the court cannot find that the defendant ratified Bensen's agreement.

Id. at 27.

■ The circumstances of the case at bar are no different from those in Downing. Assuming, for the sake of argument, that Christian was Maldonado's agent, the contract of sale executed by Christian was a nullity because Christian's authority was not in writing. In effect the agreement executed by Christian and John was null and void from its inception.[6] See Globe Oil Company Virgin Islands, Inc. v. Hess, 5 V.I. 260 (Mun. Ct. 1965) (an agreement that fails to satisfy the requirements of the Statute of Frauds is a nullity). Christian, an experienced member of the Virgin Islands Bar, and a former real estate broker, must have known that the agreement was void and unenforceable. His January 27, 1988, letter to John was nothing less than a blatant legal falsity.

D. *The Interest Award*

■■ Christian wrongfully held John's money for almost a year. During that period Christian had control of the funds, consequently interest should be assessed against Christian, at the legal rate of nine percent,[7] for the entire period he held John's money. Additionally, John should also recover interest for the period the funds were deposited with the Court because Federal Rule of Civil Procedure 67 requires that any funds deposited into the Court "shall be deposited in an interest-bearing account or invested in an interest-bearing instrument approved by the court." It was incumbent upon Christian to request that the funds paid into the Court be deposited in an interest-bearing account or, alternatively, to deposit the money in an interest-bearing account approved by the Court in compliance with Rule 67. Christian failed to follow either allowable procedure, thus causing John to lose out on additional interest to which he would otherwise have been entitled. Therefore, interest should also be assessed against Christian, at the legal rate of nine percent, for the

---

[6] Even though the agreement was null and void ab initio, it could have become enforceable if later ratified in writing by Maldonado.

[7] 11 V.I.C. § 951 (1982).

entire period the funds were deposited with the Court, until the date of the order to disburse the funds, May 15, 1989.[8]

### E. *The Fee Award*

The only question left for the Court to decide is to what extent Christian must indemnify John for his costs and attorney's fees. In addition to his costs of $86.00, John seeks indemnification in the sum of $2,232.50 for Attorney Masony's fees and $1,981.00 for Attorney Capdeville's fees. He therefore seeks a total award $4,213.50 for attorney's fees.

Allowable costs are enumerated in 5 V.I.C. § 541(a)[9] and are thus easily determined by reference to that statute, Bedford v. Pueblo Supermarkets of St. Thomas, Inc., 18 V.I. 275, 278 (Dist. Ct. 1981), but the amount of a reasonable award of attorney's fees is determined by the formula articulated in Lindy Bros. Builders, Inc. v. American Radiator, Etc., 487 F.2d 161 (3d Cir. 1973).

■■■ In the case at bar, Plaintiff requests reimbursement for costs in the sum of $86.00. He claims $55.00 for filing and service of process fees and $31.00 in costs for Xerox copies and fax charges.

---

[8] Thus, the amount of interest owed is $1,696.12 calculated as follows:

| | | |
|---|---|---|
| $2,050.00 paid on 6/24/87 until 1/25/88 | | |
| 215 days X 0.50548 | = | $ 108.68 |
| $7,000.00 paid on 7/24/87 until 1/25/88 | | |
| 185 days X 1.72602 | = | $ 319.32 |
| $1,486.25 paid on 10/24/87 until 1/25/88 | | |
| 93 days X 0.35547 | = | $ 34.08 |
| $10,536.25 from 1/25/88 until 5/15/89 | | |
| 475 days X 2.59798 | = | $1,234.04 |
| | | $1,696.12 |

[9] 5 V.I.C. § 541(a):

    (a) Costs which may be allowed in a civil action include

    (1) Fees of officers, witnesses, and jurors;

    (2) Necessary expenses of taking depositions which were reasonably necessary in the action;

    (3) Expenses of publication of the summons or notices, and the postage when they are served by mail;

    (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure;

    (5) Necessary expense of copying any public record, book, or document used as evidence on the trial; and

    (6) Attorney's fees as provided in subsection (b) of this section.

The copying and fax charges will be disallowed because those expenditures were not shown to be necessary. See Kriegel v. St. Thomas Beach Resorts, Inc., 18 V.I. 365 (Dist. Ct. 1981) (costs for photographing, photocopies, and other types of reproductions should not be taxed where the necessity for them was not shown and they were not introduced in evidence). Therefore, only $55.00 in costs will be allowed.

In deciding the amount of allowable attorney's fees, the Court should first determine the number of hours expended by the attorneys, including how many hours were spent in what manner by which attorneys. Lindy Bros., supra, 487 F.2d at 167. After calculating the time spent, the Court should determine whether the hourly rate charged is reasonable, and apply that rate to the amount of hours worked. Id. The product thus found will constitute the "lodestar" of the Court's fee award. The lodestar may be adjusted further by the quality of the work performed, considering the complexity and novelty of the issues presented, the certainty of success, and the presence, if any, of a contingency fee arrangement. 487 F.2d at 168.

In this case, John was initially represented by Attorney Brian Masony, but before the second hearing on the motion for interest, costs, and attorney's fees John retained the services of Douglas Capdeville.

Attorney Masony submitted two affidavits for costs and attorney's fees. The first, dated August 2, 1989, shows the total amount of time spent to be 14.2 hours at a billable rate of $100 per hour. Both the hourly rate and the time claimed by Attorney Masony are reasonable, therefore, multiplication of the hourly rate ($100) by the allowable hours worked (14.2 hrs.) yields a total of $1,420.

Attorney Masony's second affidavit, dated July 30, 1990, requests compensation for an additional 6.5 hours at an increased billable rate of $125 per hour. The hourly rate, although increased from the first affidavit, is still very reasonable within our legal community. However, 2.5 hours of the time claimed must be excluded because one item of compensation claimed for "motions, affidavits, and conferences" on July 30, 1990 is too vague. Multiplication of the reasonable hourly rate ($125) by the allowable time spent (4.5 hrs.) yields a total of $562.50.

Attorney Capdeville requests compensation for 13 hours. His affidavit charges for time spent on the case beginning as early as July 25, 1990. The Court notes however, that John was represented by

Attorney Masony until July 30, 1990, and Attorney Masony in fact claimed compensation for time spent on the case until that day. Accordingly, no compensation will be allowed for work done by Attorney Capdeville prior to July 31, 1990. Of the 13 hours claimed by Attorney Capdeville, 12.25 hours are allowable and non-duplicative of Attorney Masony's efforts.

Attorney Capdeville requests compensation at the rate of $150 per hour. This rate is also reasonable and within the standard rate charged by lawyers in this community with the experience and expertise of Attorney Capdeville. Accordingly, multiplication of the reasonable hourly rate ($150) by the amount of allowable hours worked (12.25 hrs.) yields a total of $1,837.50.

The lodestar of the Court's fee award is therefore $3,820.[10] The Court sees no need to adjust this amount. This case was a simple, straightforward case without any novel issues and success was certain for the Plaintiff. Ordinarily, the Court would reduce the lodestar amount where the latter circumstances are present but the record in this case makes it evident that all the allowable work performed was necessary due to Christian's obstinate refusal to release Plaintiff's funds. Hence, the Court will not reduce the lodestar amount. Just as there is no need to decrease the lodestar amount, there is no need to increase it either, because although the quality of the work was excellent, there is no evidence of a contingency fee agreement. Consequently, the lodestar amount stays at $3,820.

Generally, "the amount of attorney's fees to be awarded the prevailing party under 5 V.I.C. § 541 is intended to be an indemnification for a fair and reasonable portion of his attorney's fees incurred in the prosecution or defense of the action, and not the whole amount charged by the attorney's counsel." Damidaux v. Hess Oil Virgin Islands Corp., 18 V.I. 417, 420 (Dist. Ct. 1981) (citations omitted). However, there is an exception to this rule where part of the prevailing party's loss is the full charge made by his attorney. First Pennsylvania Bank v. La Viscount, 15 V.I. 460 (Terr. Ct. 1979). In the instant case, part of John's loss is the attorney's fees and costs he incurred as a result of Christian's wrongful withholding of John's funds. There is no reason why John should bear any loss as a result of Christian's dispute with Maldonado. The policy behind 5 V.I.C. § 541 is a clear and equitable one: "[A] party should not leave to bear

---

[10] $1,420 + $562.50 + $1,837.50 = $3,820

the legal expenses of demonstrating either that it is not at fault or that it is the victim of another's fault." Bedford v. Pueblo Supermarkets of St. Thomas, Inc., supra, at 278. Accordingly, John is entitled to indemnification of $3,820 for attorney's fees, and $55 costs for filing and service of process.

### III. CONCLUSION

It seems impossible that Christian did not realize he was obliged to return John's downpayment for the reasons discussed. Unfortunately, Christian's quest for a fee clouded his legal judgment. There is no question that Mr. John was an innocent third party reluctantly drawn into a fee dispute between an attorney and his client. In view of the fact that Christian had no authority to act as Maldonado's agent and that there was never any communication between John and Maldonado other than a letter from Ford denying Christian's agency, the Court finds that Christian is the only party at fault herein. Accordingly, judgment will be granted to the Plaintiff, against Christian, for attorney's fees, costs and accrued interest.

### ORDER

IN ACCORDANCE with the Memorandum Opinion issued this 11th day of June, 1991, it is hereby

ORDERED that Plaintiff's Motion for Interest, Costs and Attorneys' Fees is GRANTED; and it is

FURTHER ORDERED that Defendant, Allan Christian, shall pay Plaintiff, Willard John, the sum of $1,696.12 for accrued legal interest on all amounts deposited by Plaintiff Willard John with Defendant Allan Christian from June 24, 1987 to May 15, 1989, the date said funds were released from the Court's registry; and it is

FURTHER ORDERED that Defendant Allan Christian shall pay Plaintiff Willard John the sum of $3,820.00 as indemnification for his attorney's fees, together with costs in the amount $55.00.

DONE AND SO ORDERED this 11th day of June, 1991.