**In the Matter of the Estate of FELIX PITTERSON, Deceased**

Probate No. 117/1991

Territorial Court of the Virgin Islands

Div. of St. Croix

December 8, 1998

MARTIAL A. WEBSTER, Frederiksted, St. Croix, U.S.V.I., *for the Claimant*

*Attorneys,* J. H. ISHERWOOD, H. A. CURT OTTO, Christiansted, St. Croix, U.S.V.I., *for the Estate*

STEELE, *Judge*

### MEMORANDUM OPINION

An action was commenced by the Estate of Felix Pitterson, which seeks judicial determination as to all claims that the

Claimant, James Jackman, may possess against the decedent's estate. Maintained by the Estate is that the tenancy and monetary claims alleged by the Claimant are not only unsubstantiated, but are also exorbitant and unreasonable. Furthermore, a counterclaim has been filed which requests removal of both the Claimant and debris from the real property in question, as well as payment for past rent due.

At trial, Claimant relied on the equitable doctrine of part performance to assert ownership to real property which is titled in the decedent's name. It is his contention that an oral agreement existed between the decedent and himself which exchanged land for non-compensated labor. In the alternative, should this argument fail, Claimant demands compensation for the services he had previously rendered to the decedent.

This opinion shall determine the following issues: (1) whether Claimant provided sufficient evidence to constitute the application of the doctrine of part performance as a defense to the Statute of Frauds, (2) whether Claimant met the statutory requirements of 15 V.I.C. § 395 to establish a valid creditor's claim for the alleged uncompensated labor he rendered for the benefit of the decedent, and (3) whether the Estate presented adequate proof concerning its counterclaim for past rent due and property damage.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To better comprehend the matter at hand, a brief summary of pertinent facts which helped shape this current dispute shall be supplied. The decedent, Felix Pitterson, died testate on October 26, 1991, leaving a rather sizable estate behind. During his lifetime, the decedent employed several persons to assist him in maintaining and operating his property. The Claimant, James Jackman, also known as "Aku", was one of these individuals. He had begun to work indirectly for the decedent in 1971 or 1972, under the supervision of Mr. Andrews, the individual who managed and maintained the decedent's estate. With the departure of Mr. Andrews from the estate in 1985, Claimant was chosen by the deceased to succeed in this maintenance role. Apparently, it was the decedent's desire to have the person occupying this position reside on the property. Thus in 1985, Claimant moved to that

portion of the decedent's property located in Estate Cane Valley which had previously been occupied by Mr. Andrews. It is the ownership over this piece of real property, simply known as No. 2 Becks Grove, that is the center of this current controversy.

Until September of 1996, the probate record is surprisingly silent concerning this claim. Nonetheless, it is evident to the Court that the parties in question have been attempting to resolve their differences for quite sometime now. Of interest, it is noted that an affidavit asserting a creditor's claim against the estate of the deceased has never been filed on behalf of the Claimant with the Court. The Claimant has however, enjoyed sole possession over this same disputed portion of real property since the decedent's demise. The Estate, while asserting that this claim has varied and shifted several times over the years, has never demanded written proof of its existence. In fact, the Estate even acknowledged in open court the parties six year effort to arrive at an amicable agreement. Unable to achieve such an agreement, the Estate now relies on the authority of this Court to determine the validity of the Claimant's claims.

## II. DISCUSSION

When initially presented to the Court, this action appeared to involve a Claimant seeking both judicial approval of a creditor's claim and a declaration of ownership in real property. During the hearing however, it became abundantly clear to the Court that the Claimant merely sought ownership in the ten to eleven acres of property currently in his possession. It was only in the event that this ownership interest was denied, did he seek payment for services he allegedly rendered to the decedent. Thus, a conclusion must first be made concerning the ownership controversy surrounding this land.

The Court is empowered to decide this issue pursuant to the jurisdiction bestowed upon it under 15 V.I.C. § 318.[1] As no written instrument was introduced by the Claimant, this decision will

---

[1] 15 V.I.C. § 318 provides in part that:

(a) Whenever it appears probable from the affidavit of an executor or administrator, or of an heir or other person interested in the estate, that any person has concealed or in any way secreted or disposed of any property of the estate, or any writing

15

depend solely on whether the doctrine of part performance should be applied as a defense to the Statute of Frauds. Although the Court finds sufficient proof to warrant the application of this equitable doctrine, the remaining issues will be addressed in this opinion so as to thoroughly preserve all of the evidence which was presented at trial.

## A. Ownership of Real Property

It is uncontested, that during the decedent's lifetime, Claimant resided on the property which is currently in his possession. Furthermore, there has been no dispute concerning the fact that this same property is deeded in the decedent's name. However, according to the Claimant, an oral agreement existed between himself and the decedent which exchanged this property in return for the Claimant's uncompensated services to the estate.

### 1. Statute of Frauds

Any interest in real property orally created, transferred, or assigned for a period greater than one year is void and unenforceable. *Fountain Valley Corp. v. Wells*, 19 V.I. 607, 615 (D. VI 1983). Every contract for the sale of land must be in writing or evidenced by a note or memorandum, and signed by either the party to be charged or by his lawful agent under written authority. *Downing v. Fortuna Bay Estates*, 17 V.I. 20, 25 (Terr. Ct. 1980). This standard, commonly known as the Statute of Frauds, has been codified in the Virgin Islands.[2] Further interpretation of these statutes have led to the requirement that such a contract must contain a reasonably adequate description of the land if it is to be enforceable. *Roebuck v. Hendricks*, 255 F.2d 211, 212 (3d Cir. 1958); *Downing*, 17 V.I. at 28.

---

relating or pertaining thereto, or that such person has knowledge of any such property or writing being so concealed, secreted or disposed of, and refuses to disclose the same to the executor or administrator, the court upon the application of such executor or administrator, may cite such person to appear and answer under oath concerning the matter charged.

[2] 28 V.I.C. § 242 provides that:

Every contract for the leasing for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority.

Claimant provided no written instrument at trial which this Court would even remotely consider to be a valid conveyance of real property in the Territory. Much emphasis was placed on this omittance by the Estate, and several cases were cited in support of its contention that the Statute of Frauds should negate Claimant's ownership assertions. Claimant has not alleged that his claim satisfies the requirements of the Statute of Frauds, and even seems to suggest that it does not. It is his position though, that the statute does not apply in this instance, as the doctrine of part performance provides a defense. The Court is cognizant that if the Statute of Frauds is applicable, Claimant would have no possibility of success. Therefore, the issue confronted by the Court is not the Statute of Frauds, but the applicability of the defense asserted by the Claimant.

## 2. Doctrine of Part Performance

The Virgin Islands has acknowledged the doctrine of part performance as a valid defense to the Statute of Frauds. *Wells*, 19 V.I. at 615. Although it appears that the controlling Territorial precedent has only dealt with this defense in regards to oral leases of real property, the Court finds the doctrine to be applicable to the sale of land as well. Thus, these cases shall be utilized, along with the restatements of law,[3] for guidance in the determination whether part performance should apply in this instance.

The doctrine of part performance was established as a means of preventing an inequity to a person who, by either inducement or acquiescence, was permitted to rely upon an oral agreement which normally would be void under the Statute of Frauds. *Virgin Islands Distrib. v. Durkee Foods*, 19 V.I. 85, 92 (D. VI 1982); *Henderson v. Resevic*, 6 V.I. 196, 262 F. Supp. 36 (D. VI 1967). This doctrine serves to protect the individual who has performed acts pursuant to and in obvious reliance upon a verbal agreement, all with the knowl-

---

[3] 31 V.I.C. § 4 provides that:

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

edge and consent of the promisor. *Townsend v. Vanderwerker*, 16 S. Ct. 258, 262 (1895). Its purpose is to prevent virtual fraud upon the part of the promisor, who utilizes the statute in defense and receives the benefit of the acts accomplished, while the promisee is left to chance a suit at law for reimbursement of his outlays or quantum meruit for the value of his services. *Id.* at 262. The doctrine is not a substitute for the written evidence required, but merely prevents the operation of fraud. 73 AM. JUR. 2D *Statute of Frauds* § 400 (1974). It removes the statute from the case because it would be intolerable in equity for the owner of land to knowingly allow another to invest time, labor, and money in that land, upon the faith of a contract which did not exist. *Henderson*, 6 V.I. at 200; 73 AM. JUR. 2D *Statute of Frauds* § 400 (1974).

■  To enforce a verbal agreement on the grounds of part performance, the evidence presented must be clear and definite in both the terms and subject matter of the contract. 73 AM. JUR. 2D *Statute of Frauds* § 401 (1974). The plaintiff must show such acts and conduct of the defendant which amount to a representation that the defendant proposed to honor the oral agreement and not avail himself to the Statute of Frauds in order to escape its performance. *Henderson*, 6 V.I. at 200; 73 AM. JUR. 2D *Statute of Frauds* § 405 (1974). Furthermore, the plaintiff must have relied on this representation, either in performance or pursuance of his contract, so that he would incur an unjust and unconscientious injury and loss if the defendant is allowed to rely on the statute. *Henderson*, 6 V.I. at 200; 73 AM. JUR. 2D *Statute of Frauds* § 405 (1974). The Court finds this definition of part performance to be consistent with the language contained in § 129 of the Second Restatement of Contracts. This section, which deals with reliance and specific performance as related to the transfer of land, provides that:

A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

18

RESTATEMENT (SECOND) OF CONTRACTS § 129 (1979).

To more fully understand the Court's decision making process, this opinion shall individually set forth the factual determinations which have led to this current conclusion. We begin with the testimonial evidence presented concerning separate acts of land dispersement made by the decedent during his lifetime. Gifts of real property were made by the decedent in at least three different instances to individuals who were not members of his family. Further, two of these recipients were employees of the decedent, and had apparently received this land in return for their services. Of the three, two were given tracts of land totaling one-half acre in size, while the third received a two acre plot. While these gifts seem to be out of proportion to the ten to eleven acres the Claimant asserts ownership in, it is significant to note that Claimant does not allege his property acquisition to be a gift.

Claimant arrived at his ownership at what can best be described by the Court as an exchange. Although the record is silent as to whether the other witnesses received pay for their employment, upon examination of the transcript, an inference has been drawn by the Court that they did. Nevertheless, none of these individuals claimed to have received their property for uncompensated services rendered. In addition, the Court finds that a close bond existed between the decedent and the Claimant which may explain this larger allocation of property. More importantly however, it was shown that the decedent was a man who was not opposed to bestowing generous rewards of land to certain members of his employee staff.

Neither side appears to dispute the notion that the Claimant performed work for the decedent. Testimony elicited from several of the witnesses sufficiently established this fact. The disagreement seems to lie in what the Claimant was to have received in return for these acts. To support the Estate's view, it called Ms. Inocencia Garcia Cruz, a former employee of the decedent, to the stand.[4] Ms. Cruz stated that the Claimant was actually paid for the larger tasks

---

[4] Ms. Cruz was employed by Mr. Pitterson from December 1988 to August 1989, and again from December 1989 to March 1992. Among her duties at this position, she prepared payroll, checks for payments, and lease and loan agreements.

he completed for the decedent. Specifically, she meant the construction of a stone house, as well as repair work done on an office building and a police academy. A ledger, which had previously been prepared by the witness during her employment, was produced as proof of these payments.[5] She went on to explain that the Claimant had paid one hundred and seventy dollars ($170.00) a month in rent to the decedent up until 1989, at which point he was allowed to live rent free on the property in return for performing odd jobs on the estate.

During rebuttal, Claimant was given the opportunity to respond to Ms. Cruz's statements. As for the payments received for the three larger tasks, Claimant testified that this money was used for materials, equipment and payment of additional labor. The stone house, which measures approximately twenty-four feet by sixty-five feet and includes a cistern, required a backhoe and a truck to transport material during its construction.[6] Building materials ranged from concrete, steel, and blocks, to plumbing and electrical supplies. Labor consisted of five helpers, with outside individuals brought in for the plumbing and electrical work. According to Ms. Cruz however, the seventy-one thousand eight hundred dollar ($71,800.00) amount shown on the ledger for the stone house was for the Claimant's labor alone, and materials were paid separately. In addition, she testified that she never personally saw any heavy equipment or anyone assisting the Claimant when she would occasionally pass by the work sites.

The contract for the construction of the stone house stated that the builder was to furnish the materials and charge them to the owner. The failure of the Estate to provide even one receipt for these materials is both significant and troubling to the Court. Furthermore, the ledger entries prepared by Ms. Cruz are extremely ambiguous as to what the listed payments were for. The

---

[5] According to Ms. Cruz, the ledger displayed the following total payment amounts:

$71,800.00 for the stone house construction
$ 5,900.00 for the office work
$ 3,000.00 for the police academy work

[6] The Court has chosen to focus on the stone house construction, as this task received most of the attention by both parties and comprised a majority of the monetary disbursements allegedly forwarded as payment to the Claimant.

Court simply finds the testimony of the Claimant to be highly credible. In fact, the entries of the ledger even correspond to the substance of his testimony. Additionally, after reviewing the pictures of the house, the Court is of the opinion that the Claimant could not have done this work on his own. While the Court does not question Ms. Cruz's honesty, it does believe that she may have misconstrued where this money was being applied.

Photographic evidence was produced by Claimant which showed the complete destruction of the dwelling he resided in prior to Hurricane Hugo.[7] It is Claimant's contention that he paid the one hundred and seventy dollar rent prior to the storm because he was living in the decedent's building. The work he was performing for the decedent during this time period was in exchange for the land, and not for the use of the building. Therefore, with the destruction of the house, there was no further need to pay rent. The only evidence offered by the Estate to refute this assertion was Ms. Cruz's testimony. On cross-examination however, even Ms. Cruz stated that she did not know whether Claimant performed odd jobs for the decedent during the period he was paying rent.

Numerous witnesses testified that the decedent personally told them that he had given the Claimant land. The Estate vehemently opposed the admissibility of these alleged conversations, and entered an ongoing hearsay objection for the record. Nonetheless, the Court found these statements to fall within certain evidentiary exceptions, and denied the objection. Specifically, the Court utilized Fed. R. Evid. 804(b)(3) in its determination.[8] The decedent's November 4, 1988 testament devised all of his property to either his immediate family, the named executor or to the University of the Virgin Islands. Thus it was reasoned, that any statement made by the decedent which alienated his property to an individual other than those which were named in the testament, was against his proprietary interest. Furthermore, the Court found it be in the best interest of justice to allow these declarations. However, it

---

[7] Since the parties have chosen to use Hurricane Hugo as a time line, it should be noted that this storm passed over the Island of St. Croix on September 17, 1989.

[8] The Federal Rules of Evidence are applicable in the Virgin Islands pursuant to Territorial Court Rule 7.

should be pointed out that these statements are not the controlling factor in this Court's decision. Regardless of their admissibility, enough additional evidence was presented to sufficiently establish the Claimant's defense to the Statute of Frauds.

Entry into possession of land and the making of valuable improvements thereon is considered one of the most satisfactory evidences of part performance. *Townsend*, 16 S. Ct. at 262. Indeed, in this current instance it was Claimant's unopposed construction of a permanent residence on the property in question which received the greatest amount of weight in the Court's decision to apply the doctrine. As mentioned previously in the opinion, Claimant produced photographs at trial which depicted the post Hurricane Hugo condition of the house he and his family had been occupying prior to the storm. Upon inspection of these pictures, it is apparent to the Court that nothing remained of this building which could be considered to be habitable. As a result of this destruction, a house was subsequently constructed on the property by the Claimant, all at his own expense. Claimant testified that this dwelling was built with the complete knowledge of the decedent, and was begun only after receiving his blessing. Furthermore, he stated that the decedent had even visited him at this house.

During the hearing, several witnesses provided their perception of the relationship decedent had shared with the Claimant. Based on this testimony, the Court is fully satisfied that a close bond existed between these individuals. Considering the nature of this relationship and the time span between the storm's occurrence and the decedent's death, it would be rather remote that the decedent was unaware of Claimant's construction on the property. Indeed, the Estate presented no allegations in regards to any such lack of knowledge. This fact, combined with the testimony of the Claimant, convinces the Court that the decedent not only realized that a permanent residence was being built on this land, but he approved of the structure as well. Absolutely no evidence exists in the record which would even suggest that the decedent ever opposed this construction. Thus, through the conduct of the decedent, the Court finds that it was his intention to honor the oral land contract he had entered into with the Claimant, and not avail himself to the Statute of Frauds.

■ It was maintained by the Claimant that the construction of his home was a product of the decedent's verbal agreement. While responding to inquiries concerning certain construction decisions, Claimant claimed he made these choices based on his personal knowledge that the decedent was a man of his word. Claimant further testified that he accepted this arrangement in order to secure something for his children's future.[9] These statements were quite compelling, and the Court finds the reliance of the Claimant on the decedent's representations to be reasonable. Claimant has not only built his home and farmed on this land, but he has provided for his children's future here. With all the acts performed on this property, any remedy other than that of specific performance would be unjust and cause Claimant significant injury and loss.

Since the Court has found the doctrine of part performance to be applicable, the last issue remaining to be resolved is the amount of real property to be awarded the Claimant. A boundary survey of the land alleged to be included in the agreement was provided at trial. Although the individual who created this instrument was not present for questioning, this survey was adequate to represent the specific property claims brought by the Claimant. While the issuance of a judgment based on this evidence is possible, it is the opinion of the Court that justice would be best served if both parties were allowed an opportunity to provide further information regarding the amount of property to be allocated. Thus, each party shall be granted an additional period of time to supply the Court with a post-trial memorandum concerning this issue if they so desire.

### B. Creditor's Claim

The statute in the Virgin Islands Code which guides the Court in its determination whether to validate a creditor's claim rejected by the executor of an estate is 15 V.I.C. § 395. To prevail in his claim, the prospective creditor must satisfy the following burden of proof:

---

[9] While testifying about his children's future, Claimant explained that his children had been born on this land, and that he had planted a fruit tree to represent each of them, burying their navel strings beneath the tree. He stated that he would not have performed this action had there been no agreement for the land with the decedent.

23

. . . No claim which has been rejected by the executor or administrator as aforesaid shall be allowed by the court, except upon some *competent or satisfactory evidence other than the testimony of the claimant*. No claim shall be allowed by the executor or administrator or the district court which is barred by the statute of limitations.

15 V.I.C. § 395 (emphasis added).

■ Other than the evidence received regarding the work done on the stone house, the office building and the police academy, support for the remaining alleged services performed by the Claimant rested solely on his own testimony. The standard required to be met is explicit, and the Court is unable to rely on the Claimant's testimony alone. More importantly however, no proof was presented as to the value of these services. A statement was made by the Claimant that the work performed totaled somewhere between two hundred thousand dollars ($200,000.00) and three hundred thousand dollars ($300,000.00). At best, this extreme generalization can be designated as an educated guess. Clearly, without sufficient evidence to properly estimate the worth of the services, Claimant's claim would have failed.

### C. The Estate's Counterclaim

Several counterclaims were presented by the Estate. These ranged from the removal of both the Claimant from the property and the debris he allegedly placed there, to payment for past rent due. Specifically, it was sought to have Claimant ordered to vacate the premises within sixty (60) days of the judgment. As for the physical condition of the property, it was maintained that its value was diminished due to the large amount of scrap, trash and junk vehicles which have been brought there by the Claimant. Also shared was the concern regarding the possible environmental risk and liability facing the Estate in reference to several five gallon containers of unknown content left on the property. The Estate proposed to waive its right to the fourteen thousand one hundred and ten dollar ($14,110.00) alleged past rent due, if the Claimant were to properly clean the property and vacate it within the specified time requested.

24

■ The Claimant's successful ownership claim sufficiently negates each of these counterclaims. Nonetheless, had Claimant not prevailed, the Court would have reached the same conclusion and denied the Estate's demands. In order to force the Claimant to vacate the property, a separate action for forcible entry and detainer would have to be brought by the Estate. In regards to the property's condition, no evidence was introduced as to what amount of funds were necessary to adequately clean it up. The Estate even conceded that it had no idea of the cost, except that it would be very expensive. Thus the Court could not grant this remedy, as the Estate failed to provide the amount of damage. Finally, there existed no proof that the Claimant was required to pay rent, at any amount, for the property in his possession. In fact, the evidence presented tends to show that the requirement for payment of rent was removed sometime in 1989. Therefore, this claim would also be rejected.

## III. CONCLUSION

The essence of this action is the ownership dispute over that portion of land which is currently in the possession of the Claimant. This conflict does not fall within the realm of a creditor's claim, as the Claimant allegedly owned this property before the decedent's death. It is the Estate which questions this verbal transfer and seeks possession, thus the Code articles concerning real property control. Claimant does not contend that his agreement with the decedent overcomes the Statute of Frauds, but instead depends on the equitable doctrine of part performance to take the statute out of the case.

Ample evidence was produced at trial to authorize the application of this doctrine. It was shown that the Claimant relied on the oral contract when he constructed a permanent residence on the property. Furthermore, the Court is satisfied that the decedent had full knowledge of this dwelling, and did not oppose its construction. This reliance, coupled with the improvements made on the property, creates a case of part performance sufficient enough to remove the Statute of Frauds and warrant specific performance of the agreement. The Court is convinced that the Claimant did indeed perform services for the decedent in exchange for land. The

fact that Claimant was never on the decedent's payroll, combined with his discontinuance of rental payments after Hurricane Hugo, helps to support this finding. Consideration was also given to the close relationship Claimant shared with the deceased, and the established characteristic of the decedent to reward some of his employees with gifts of land. All that remains to be decided is the portion of property to be awarded the Claimant. In the interest of justice, this issue is being reserved for the submission of additional evidence by the parties.

The Court's finding concerning the application of the doctrine of part performance directly impacts the remaining two issues in this action, negating them both. Nonetheless, to preserve the evidence presented at trial, the Court addressed these matters and assigned reasons as to why each respective claim would have failed.

Dated: December 8, 1998